**STATE of Missouri, Plaintiff-Respondent,**

v.

**Earl Jacob TUSTIN, Defendant-Appellant.**

No. 7753.

Springfield Court of Appeals.

Missouri.

March 13, 1959.

Motion for Rehearing or, in the Alternative, to Transfer to Supreme Court Overruled March 31, 1959.

Lilley, Bussell & Cowan, Springfield, for defendant-appellant.

J. Lyndon Sturgis, Springfield, Fred L. Howard, Jefferson City, for plaintiff-respondent.

RUARK, Judge.

This case involves construction of the so-called reciprocity law in reference to registration of outstate motor vehicles. The driver of a tractor-trailer unit has been convicted of operating upon the highways of this state a motor vehicle not properly licensed in this state, and he has appealed.

It is stipulated that the vehicle is the property of Ruan Equipment Company; that Ruan was incorporated under the laws of the State of Delaware, but its only office or place of business in Delaware is that of its statutory agent; that Ruan's principal place of business is Fort Wayne, Indiana, where the vehicle is based, garaged, and usually repaired, and from whence such vehicle is usually and customarily operated. Personal property taxes on said vehicle are paid in Indiana. Certificate of title thereto was issued to Ruan in the State of Indiana, and the vehicle is registered and licensed in and by the State of Indiana and it bore and displayed the proper Indiana plates.

It is also stipulated that in the reverse of the situation here a corporation (organized in Delaware and having its principal place of business in Missouri, having vehicles based and properly registered in Missouri) would be accorded reciprocity in Indiana.

It is further stipulated that in the situation which we have in this case the State of Delaware would accord reciprocity to the Indiana vehicle.

Section 301.270, V.A.M.S., provides that:

"A nonresident owner, except as otherwise herein provided, owning any motor vehicle which has been duly registered * * * in the state, country or other place *of which the owner is a resident* * * * may operate or permit the operation of such vehicle within this state without registering * * * provided that the provisions of this section shall be operative as to a vehicle owned by a nonresident of this state only to the extent that under the laws of the state, country or other *place of residence* of such nonresident owner like exemptions are granted to vehicles registered under the laws of and owned by residents of this state."

The dispute arises over the meaning of the word "resident." The lower court held and respondent contends that, as used in the statute, the word means or requires a residence equivalent to domicile; that the domicile of the corporation is always that of the state of its birth; that the corporation cannot migrate from one state to another; and that the domicile of creation remains, like a permanently attached legal umbilical cord, a part of the very existence of the corporate entity. The appellant contends that domicile and residence are two separable things and that corporate residence can be acquired in a state independent of its original incorporation by the establishment of a "principal place of business" in the chosen state.

In a sense both parties are right. We hesitate to essay any definition of "residence," for the word is like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense.[1] It is generally said that a corporation's place of domiciliary citizenship is the state of its incorporation and that this can never change,[2] at least when the principal place

---

1. See 77 C.J.S. Residence, p. 289 et seq.; 17A Am.Jur., Domicil, sec. 9, p. 201; McDowell v. Friedman Bros. Shoe Co., 135 Mo.App. 276, 115 S.W. 1028, 1031.

2. 20 C.J.S. Corporations § 1794, p. 17; Fletcher, Cyclopedia of Corporations, vol. 8, ch. 48; Restatement, Conflict of Laws, sec. 41, p. 65; State ex rel. Northwestern Mut. Fire Ass'n v. Cook, 349 Mo. 225, 160 S.W.2d 687.

of business is designated in the charter.[3] But it is also frequently said that domicile and residence are not interchangeable words and that residence can and often does have a broader meaning if used in that broader sense; that residence is an *act,* the fact of abiding, not necessarily the same as legal domicile,[4] so that, for the purposes of motor vehicle registration, a person may be a "resident" of more than one state [5]; and that, for many practical purposes, the "residence" of a corporation is the place where it has its principal place of business and "lives its life," even though it may have a technical domicile in the state of its creation.[6] In State ex rel. Northwestern Mut. Fire Ass'n v. Cook, 349 Mo. 225, 160 S.W. 2d 687, loc. cit. 691, it was said:

> "But all these decisions do show that a corporation may have more than one residence, and a foreign corporation licensed to do business in Missouri, has at least a constructive residence in this state. We must assume that the legislature knew that of these decisions when it enacted this section, and knew that a foreign corporation licensed to do business in Missouri could be a resident of this state."

The meaning of the word "resident" depends upon the purpose in the law where the word is employed.[7] Consequently we need not here decide whether the defendant was, by exact and narrow technical definition, a "resident" of the State of Delaware, but we are driven to the question, what did the General Assembly mean and intend by the word "resident" in that portion of the act which deals with reciprocity?

We note that in 1941 the St. Louis Court of Appeals was called upon to construe the words *"residing in such municipalities"* as used in what is now Section 301.340 of the same chapter of the motor vehicle law. In that case, City of St. Louis v. Temples, Mo.App., 149 S.W.2d 888, the court was confronted with the question of whether the City of St. Louis could collect a license tax on a vehicle which was domiciled at Sikeston but based and used from an office in St. Louis. The statute (then Laws of 1935, p. 294) delegated to cities the right to collect license taxes from an owner residing in the municipality. The court upheld the tax, stating that the lawmakers did not intend to limit the words to require actual domicile in the city, but that it was consonant with the reason and the purpose of the statute to use the term "resident" in the sense of the place where the truck was regularly engaged in business activity. Although this section has been revised to some extent, the words involved have remained the same and we must assume the legislature was content with that construction.

We find three foreign cases which bear on this problem, viz., State of New Jersey v. Garford Trucking Co., Inc., 4 N.J. 346, 72 A.2d 851, 16 A.L.R.2d 1407; Western Express Co. v. Wallace, 144 Ohio St. 612, 60 N.E.2d 312; Hilburn v. Herrin Transportation Co., Tex.Civ.App., 197 S.W.2d 149. (Digest of all three of these cases will be found at 16 A.L.R.2d 1414, annotation.) The cases are not too helpful, however, because in each one the exemption claimant was also a resident of the state in which it claimed the exemption; and in

3. 18 C.J.S. Corporations § 176(b), p. 583 et seq.

4. 77 C.J.S. Residence (Judicial Definitions), p. 302; 13 Am.Jur., Corporations, sec. 148, p. 281; 23 Am.Jur., Foreign Corporations, sec. 32 et seq., p. 44.

5. 60 C.J.S. Motor Vehicles § 68, p. 248.

6. State ex rel. Northwestern Mut. Fire Ass'n v. Cook, 349 Mo. 225, 160 S.W.2d 687, loc. cit. 690, and cases cited; International Milling Co. v. Columbia

Transportation Co., 292 U.S. 511, 54 S. Ct. 797, 78 L.Ed. 1396; see Middough v. St. Joseph & Denver City R. Co., 51 Mo. 520; In re Rice Chocolate Co., D.C. Mass., 36 F.Supp. 365; see Sease v. Central Greyhound Lines, 306 N.Y. 284, 117 N.E.2d 899; Mergenthaler Linotype Co. v. Herrmann, Tex.Civ.App., 211 S.W.2d 633.

7. 77 C.J.S. Residence (Constitutional and Statutory Use), p. 303; 13 Am.Jur., Corporations, sec. 148, p. 281.

all these cases the court refused to treat the claimant as a nonresident.

▮▮▮ In ascertaining the meaning of the statute we think it is not just a question of strict or liberal construction,[8] but rather what the lawmakers meant by the use of the word "resident." A primary rule of construction is that we attempt to ascertain the intention of the General Assembly. This is to be found, if possible, by faithfully giving the language of the act its plain and rational meaning if such can be done. In making such determination we must consider and give weight to the object sought to be accomplished, *the manifest purpose of the act;* and we avoid, if possible, any construction which will lead to absurd or unreasonable results.[9]

If this were solely a question of "strict" or "liberal" construction, it would appear that the one contended for by respondent is of more narrow and technical nature than the broader one contended for by appellant. And if "plain meaning" is to have bearing we think the ordinary man would understand the plain, bare word "residence" to mean where a man (or a corporation) actually did his living, as against some far-off attachment brought about by legal technicality of origin. But it is, as we have said, not a question of strict or liberal construction, nor how John Doe might understand it; it is how the lawmakers *intended it in the light of the object they sought to accomplish.*

▮▮▮ The object and purposes of the whole chapter dealing with motor vehicle registration are several. It is, for instance, both a revenue measure and an exercise of police power.[10] But the manifest purpose of the particular section 301.270 is a masonic one of securing to all of our citizens "reciprocity," so they may be free to travel in foreign states without being subject to harassment or "tribute of passage." It is to be assumed that the legislature intended to secure this advantage to the whole body of the citizenry, not just a portion of them. In order to obtain this immunity it was, and is, necessary to give and exchange similar "immunities" somewhat after the fashion of the robber barons of Old Europe. A refusal to exchange equal amenities could result in a feudal situation.[11] The hard rock bottom of reciprocity is that if you don't give it you don't get it. Presumably the legislature intended to benefit its citizens by securing the right to unobstructed travel in as many states as possible, not to secure a perfect, double-dyed exchange of reciprocity with just one or more favored states. It is a matter of common knowledge that a great many corporations are organized under Delaware law, although they live their actual lives and do their actual business as at least quasi citizens [12] of Missouri and other states. A construction contended for by respondent would give Missouri a Grade A reciprocity with the State of Delaware, but it could result in leaving Missouri as an island surrounded by other states which retaliated by feeding a considerable number of our residents our own bitter medicine. This we think was not what the lawmakers intended.

It is our conclusion that Ruan was a resident of the State of Indiana within the intended meaning of the act and that, hav-

8. In re Dugan's Estate, Mo.App., 309 S.W. 2d 137, 143.

9. State ex rel. M. J. Gorzik Corporation v. Mosman, Mo.App., 305 S.W.2d 733; Globe-Democrat Pub. Co. v. Industrial Commission, Mo.App., 301 S.W.2d 846; Kansas City v. Travelers Insurance Co., Mo.App., 284 S.W.2d 874; Midland Realty Co. v. Manzella, Mo.App., 308 S.W.2d 326.

10. State ex rel. McClung v. Becker, 288 Mo. 607, 233 S.W. 54 (banc); Peper v. American Exchange Nat. Bank in St. Louis, Mo.App., 205 S.W.2d 215; 357 Mo. 652, 210 S.W.2d 41; Ex parte Kneedler, 243 Mo. 632, 147 S.W. 983, 40 L.R.A., N.S., 622.

11. The word "feudal" is "intended" in the sense as applied to an Ozark mountain feud of retaliation.

12. State ex rel. Davenport v. International Harvester Co., 216 Ind. 463, 25 N.E.2d 242.

ing complied with the laws of that state, it was entitled to the privilege of occasionally operating its motor vehicle upon the highways of the State of Missouri without registering it for license in this state. Accordingly the judgment of conviction is reversed and appellant is discharged.

STONE, P. J., and McDOWELL, J., concur.