### STATE of Missouri ex rel. QUEST COMMUNICATIONS CORPORATION and Albert E. Cinelli, Relators,

v.

### The Honorable George C. BALDRIDGE, Respondent.

### No. 20450.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 9, 1996.

Albert W.L. Moore, Jr., Independence, for relators.

Karl W. Blanchard, John R. Mollenkamp, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for respondent.

MONTGOMERY, Presiding Judge.

The Relators, Quest Communications Corporation (Quest) and Albert E. Cinelli (Cinelli), seek prohibition to prevent Judge George C. Baldridge (Respondent) from proceeding further, except to transfer the case, in the underlying case where the Plaintiffs are Mercantile Bank of Joplin, N.A. and A.M. Brown, Trustees of the Youngman Trust, and the Relators are defendants. Our Preliminary Order in Prohibition issued September 13, 1995.

The question is whether venue is proper in Jasper County, where suit was filed, or in

Jackson County, where Cinelli and his wife live part of each year in a home they own, or in the City of St. Louis, where Quest, a Florida corporation authorized to do business in Missouri, has its registered agent for service of process.

■ If venue is improper in the county where the action is brought, prohibition lies to bar the trial court from taking any further action, except to transfer the case to the county of proper venue. *State ex rel. Drake Publishers v. Baker*, 859 S.W.2d 201, 203 (Mo.App.1993).

Relators claim the proper venue is in Jackson County or the City of St. Louis as required by § 508.010(2).[1] Respondent urges that venue lies in Jasper County because Plaintiffs' petition contains "two distinct claims." The claim against Quest is based on a promissory note, and the claim against Cinelli is based on his separate guaranty of Quest's note. Respondent believes the venue for the claim against Quest, when considered alone, is determined by § 508.040,[2] the corporation venue statute, and that venue for the claim against Cinelli, when considered alone, is determined by § 508.010(4).[3]

After Plaintiffs commenced the underlying case, Cinelli was served at Quest's corporate offices in Johnson County, Kansas. Quest was apparently served through its registered agent in the City of St. Louis.

Relators filed a motion to dismiss for lack of venue and alternatively requested transfer of the case under § 476.410. In support of the motion, by affidavit, Cinelli stated he was a resident of Jackson County, Missouri, having lived there since 1990. In addition, Relators alleged that Quest is deemed to reside in the City of St. Louis for venue purposes, and therefore venue lies properly either in Jackson County or the City of St. Louis under

§ 508.010(2), which provides, in pertinent part, as follows:

Suits instituted by summons shall, except as otherwise provided by law, be brought:

. . . .

(2) When there are several defendants and they reside in different counties, the suit may be brought in any such county.

Relying on Cinelli's responses to Plaintiffs' interrogatories and request to produce, Respondent determined Cinelli was a resident of Texas, not Missouri, because he (1) had a Texas driver's license, (2) registered to vote in Texas, (3) filed his 1994 federal income tax return showing Texas as his "domicile," and (4) paid 1994 real estate taxes in Texas.

As we understand Respondent's ruling, venue was found proper in Jasper County because the venue for suit against Cinelli, as a nonresident, is in any county in the state under § 508.010(4) and because § 508.040 allows suits against Quest to be commenced where the cause of action accrued.[4] After finding "that the note and guarantee that are the subject matter of this action were executed ... in Jasper County, Missouri," Relators' motion to dismiss was denied.

■ Relators' brief in this Court contains Cinelli's affidavit reciting that (1) he and his wife own a house in Kansas City, Missouri, and in South Padre Island, Texas; (2) they spend part of the year in each home; and (3) he considers himself to have residences in both states, but he has elected to call Texas his domicile for voting and other purposes. Respondent's brief refers to this affidavit as self-serving and asks us to disregard it because of the finding below. Clearly, Respondent believes that a person can only be a resident of one state for venue purposes even though it is undisputed that Cinelli lives in his Kansas City home part of each year.

---

1. Statutory references are to RSMo 1994, unless otherwise indicated.

2. In pertinent part, § 508.040 provides that "[s]uits against corporations shall be commenced either in the county where the cause of action accrued ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business."

3. § 508.010(4) provides that "[w]hen all the defendants are nonresidents of the state, suit may be brought in any county in this state."

4. Tort actions can also be brought where the cause of action accrued, § 508.010(6), but the underlying action is not a tort case.

In order to determine whether § 508.010(2) is applicable, we must first decide if Respondent correctly found Cinelli to be a nonresident of this state for venue purposes. *State v. Tustin*, 322 S.W.2d 179 (Mo. App.1959), though not factually like the instant case, discusses the statutory use of the word "resident." This Court said, "We hesitate to essay any definition of 'residence,' for the word is like a slippery eel, and the definition which fits one situation will wriggle out of our hands when used in another context or in a different sense." *Id.* at 180. *Tustin* involved the use of the word "resident" in § 301.270 (now § 301.271), the reciprocity law regarding registration of out-of-state motor vehicles. This Court decided that the "meaning of the word 'resident' depends upon the purpose in the law where the word is employed." *Id.* at 181. The result in *Tustin* is based upon application of the following rule of statutory construction:

> In ascertaining the meaning of the statute we think it is not just a question of strict or liberal construction, but rather what the lawmakers meant by the use of the word "resident." A primary rule of construction is that we attempt to ascertain the intention of the General Assembly. This is to be found, if possible, by faithfully giving the language of the act its plain and rational meaning if such can be done. In making such determination we must consider and give weight to the object sought to be accomplished, *the manifest purpose of the act;* and we avoid, if possible, any construction which will lead to absurd or unreasonable results.

*Id.* at 182 (footnotes omitted).

*Tustin* is helpful in determining whether Cinelli is a Missouri resident for venue purposes as he claims. We must decide if the lawmakers intended the word "resident" in chapter 508 to mean full-time or part-time residents in light of the purpose of the venue statute. We cannot construe the word "resident" in a way that will lead to an absurd or unreasonable result.

■ The purpose of the venue statutes is to provide a convenient, logical and orderly forum for litigation. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 196 (Mo.

banc 1991). Venue in Missouri is determined solely by statute, and chapter 508 sets out the provisions that control venue. *Id.*

■ The parties cite no Missouri cases, and we find none, discussing the use of the word "resident" in the context of the facts here. However, over the years, Missouri courts have generally defined "residence" as meaning a physical presence and a degree of permanency. *State Farm Mut. Auto. Ins. Co. v. McBride*, 489 S.W.2d 229, 232 (Mo. App.1972). The degree of permanency necessary is an intention to remain indefinitely. *Id.* In other words, "[r]esidence is a matter of intention and depends on a person's physical location." *Elder v. Metropolitan Property & Casualty Co.*, 851 S.W.2d 557, 561 (Mo. App.1993). For numerous other similar cases see 18 Mo.Dig.2d *Domicile* Key No. 1.

■ On the other hand, "domicile" has long been defined as " 'that place where a person has his true, fixed and permanent home and principal establishment to which, whenever he is absent, he has the intention of returning.' " *Byars v. Byars*, 593 S.W.2d 656, 658 (Mo.App.1980) (*quoting Fowler v. Clayton School Dist.*, 528 S.W.2d 955, 957 (Mo.App.1975)). However, a "person can have but one domicile, which, when once established, continues until he renounces it and takes up another in its stead." *In re Toler's Estate*, 325 S.W.2d 755, 759 (Mo. 1959).

■ We glean from these cases that a distinction exists between a person's residence and a person's domicile. The legislature chose to place venue based upon residence, not domicile. Another familiar rule of statutory construction applies in this circumstance. " '[W]here a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended.' " *State v. Duggar*, 806 S.W.2d 407, 408 (Mo. banc 1991) (*quoting Maltz v. Jackoway–Katz Cap Co.*, 336 Mo. 1000, 82 S.W.2d 909, 912 (1934)).

Therefore, we presume the legislature understood a person's residence was defined in a different manner than domicile when enacting the general venue statute, § 508.010. The definition of residence under the above cases implies a person can have more than one, especially in view of settled law that a person can have only one domicile which is the "principal establishment" to which a person returns. By inference, a person could have a residence at a location from which he returns to his domicile.

Other authorities confirm our view that residence and domicile are not synonymous terms. In 25 Am.Jur.2d *Domicile* § 4 (1966), we find the following recitation:

"Residence" may mean a temporary, permanent, or transient character; ...

By comparison, domicil is said to be inclusive of residence, having a broader and more comprehensive meaning than residence. Residence, together with the requisite intent, is necessary to acquire domicil, but actual residence is not necessary to preserve a domicil after it is once acquired. Consequently, one may be a resident of one jurisdiction while having a domicil in another. And while every person has one and only one domicil, a person may have no place which can be called his residence or he may have several such places.

Under the definition of "Residence" in Black's Law Dictionary 1176 (5th ed. 1979), the authors note the differences between residence and domicile as follows:

As "domicile" and "residence" are usually in the same place, they are frequently used as if they had the same meaning, but they are not identical terms, for a person may have two places of residence, as in the city and country, but only one domicile. Residence means living in a particular locality, but domicile means living in that locality with intent to make it a fixed and permanent home. Residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile. "Residence" is not

synonymous with "domicile," though the two terms are closely related; a person may have only one legal domicile at one time, but he may have more than one residence.

(Citations omitted).[5]

We believe the legislature used the word "reside" in § 508.010(2) consistently with the meaning of "residence" discussed in the above authorities. We find no legislative intent to exclude a person like Cinelli from being considered a Missouri resident for venue purposes. It is common knowledge that in today's mobile and more affluent society many people "go south" for the winter. Owning and residing in two homes is not an uncommon occurrence. To determine that Cinelli is not a Missouri resident ignores this reality. We would reach an absurd and unreasonable result if "reside" is construed differently. Furthermore, the result we reach is consistent with the purposes of the venue statutes. If Plaintiffs had chosen to only sue Cinelli, as Plaintiffs claim was possible, Jackson County would have been a convenient, logical and orderly forum for such suit because of Cinelli's residence there.

Therefore, Respondent erroneously determined, as a matter of law, that Cinelli was a nonresident of Missouri for venue purposes.

In view of our determination regarding Cinelli's residence, our next task is deciding if Relators correctly contend that § 508.010(2) applies here. *State ex rel. Malone v. Mummert*, 889 S.W.2d 822 (Mo. banc 1994), provides the answer. "Where the defendants are a mix of corporations and individuals," venue is determined by § 508.010. *Id.* at 824. There, the individual defendants were Missouri residents, and one of the corporate defendants, Cotter, was a Delaware corporation having a registered agent in the City of St. Louis. After finding the individual defendants were properly joined, the Supreme Court held that § 508.010(2) permitted filing of the suit in the City of St. Louis because the residence of a corporation in this state is the county where its registered office is maintained. *Id.* See *State ex rel. E.I. du*

5. By including the definitions of residence from this and the preceding quote, we do not intend to

alter its definition as set forth in *State Farm Mut. Auto. Ins. Co. v. McBride, supra.*

*Pont v. Mummert,* 890 S.W.2d 367, 369 (Mo. App.1994) (under general venue statute, a corporate defendant can reside in the county where its registered agent is maintained).

Thus, venue in this case is improper in Jasper County, Missouri, because the individual defendant, Cinelli, resides in Jackson County, and Quest, the foreign corporate defendant, resides in the City of St. Louis for venue purposes. *Malone v. Mummert* requires the application of § 508.010(2) in deciding venue when, like the instant case, one or more individuals are sued together with one or more corporations. We are constitutionally bound to follow the last controlling decision of the Missouri Supreme Court. Mo. Const. art. V, § 2 (1945); *Godfrey v. Union Elec. Co.,* 874 S.W.2d 504, 505 (Mo. App.1994).[6]

Venue in this case lies either in Jackson County or the City of St. Louis. Under § 476.410 Respondent is required to transfer this case to any "circuit in which it could have been brought."

The Preliminary Order in Prohibition is made permanent, and the Respondent is directed to take no further action in the underlying case except to transfer it either to Jackson County or the City of St. Louis after considering which forum is most convenient to the parties.

GARRISON and BARNEY, JJ., concur.

---

**6.** We reject Respondent's argument based on *State ex rel. Jinkerson v. Koehr,* 826 S.W.2d 346, 348 (Mo. banc 1992), where, with reference to the permissive joinder rule, the Supreme Court said: "[Plaintiffs] must establish venue for each cause of action independently." In *Koehr,* plaintiffs allegedly suffered damage in two separate automobile accidents and joined all the defendants from both accidents in one petition. The court determined that Rule 52.05(a) (the permissive joinder rule) did not allow the plaintiffs to join the two accidents in one petition because common liability was lacking among the defendants. Here, unlike *Koehr,* even if Plaintiffs assert two separate claims, Relators were properly joined under Rule 52.05(a). Because Plaintiffs decided to bring one action against two properly joined defendants, venue must be based upon § 508.010(2).