**STATE of Missouri, Respondent,**

v.

**Joseph W. MATTIC, Appellant.**

**No. WD 59728.**

Missouri Court of Appeals,
Western District.

Sept. 17, 2002.

Sarah Weber Patel, Assistant Public Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before HOWARD, P.J., and SMITH and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Joseph W. Mattic appeals his convictions of statutory rape in the first degree, § 566.032 RSMo 1994, statutory sodomy in the first degree, § 566.062 RSMo 1994, and rape, § 566.030 RSMo Cum.Supp. 1993. Mattic raises two points on appeal. First, he contends the trial court erred in allowing the State to file a superseding indictment on the day of trial that charged him with an additional rape count. Second, he contends the trial court erred in allowing the admission of part of Tanya Johaness's testimony and portions of the videotaped interview of M.S. pursuant to § 491.075,[1] in that such evidence was inadmissible hearsay.

We affirm.

## Facts

On October 18, 1999, Mattic was charged by indictment with statutory rape in the first degree and statutory sodomy in the second degree. On the day of trial, a new indictment was filed charging Mattic with an additional count of rape based on acts committed prior to January 1, 1995.

The sufficiency of the evidence is not at issue in this appeal. Viewed in the light most favorable to the verdict, the following evidence was adduced.

On March 12, 1998, following a hotline call to DFS, M.S. and A.S., as well as four other related children, were taken into DFS custody due to unsuitable living conditions in their home, including poor sanitation, no food, and a large number of children living in a small environment. All but the youngest of the children were placed in the Salvation Army Children's Shelter.

While on a field trip to Gillham Park with the shelter, M.S., age 10, and A.S., age 9, started crying as their van passed the park. When asked why they were crying, both girls disclosed that they had been raped. Upon return to the shelter, social worker supervisor Tanya Johaness asked social worker Nicole Sequira to speak with M.S. while Johaness spoke with A.S. A.S. told Johaness that she had seen Mattic, who she believed to be her father's brother, rape her sister M.S. in the bathroom of a house by Gillham Park. Mattic had also tried to pay the victim's "stepmom's" son to rape M.S., but he refused. On another occasion, Mattic told M.S. he was going to rape her and pulled her into the bathroom by the arm. A.S. heard M.S. screaming and saw her come out of the bathroom with tears in her eyes. A.S. told Johaness that on another occasion,

---

1. Statutory references are to RSMo 2000, unless otherwise indicated.

Mattic told her he was going to rape her, but she and M.S. were able to run away. A.S. also told Johaness that she was having an itchy discharge "down there," pointing to her pelvic area, which she described as "green and kind of chunky."

Following the interviews with A.S. and M.S., Sequira made a hotline call to DFS. Katherine Cole of DFS, who had previously been assigned to the case, made arrangements to take A.S. and M.S. to the hospital for exams. Because of A.S.'s discharge, Cole took her to the emergency room at Children's Mercy Hospital. After Cole had picked up A.S. to take her to the hospital, A.S. told Cole that her father and Mattic had raped her. She said that Mattic had put his private part in her vagina and in her "butt." A.S. kept talking about the sexual abuse in the hospital waiting room. A.S.'s medical exam revealed a rolled hymen and gaping urethra, which were consistent with sexual abuse. A.S.'s entire vaginal area was red, "broken down looking," and bled at the slightest touch, which was also consistent with abuse.

On March 30, 1998, Cole took both girls to the Child Protection Center for them to be interviewed regarding the sexual abuse. Both girls were interviewed by Julie Donelon, who recorded the interviews. The taped interviews were admitted into evidence at trial and played for the jury. In her interview, A.S. stated that Mattic had put his private part in her "butt" or "bootie." M.S. stated in her interview that Mattic put his "d-i-c-k" in her "kitty cat." She stated that this happened more than one time, both at their home on Woodlawn and their home on Gillham. The victims lived on Woodlawn in 1994 and on Gillham in 1996. M.S. also stated that Mattic had done the same thing to A.S. Following the interview, M.S. told Cole that Mattic had put his penis in her vagina at both the Woodlawn and Gillham addresses.

Both girls testified at trial. A.S. testified that Mattic had put his penis inside her "bootie" and her crotch. M.S. testified that Mattic had touched the inside of her "kitty cat" with his private part.

Mattic was eventually arrested for these offenses and was questioned by Detective Brad Dumit of the Kansas City police department. After initially denying even knowing either victim, Mattic eventually admitted that he had "penis to vagina" sex with M.S. on one occasion, but never admitted to any sexual contact with A.S.

Mattic testified in his own defense, denying ever having sexual contact with either victim and claiming that he did not remember giving a statement to the police, as he suffered from a seizure disorder with blackouts.

The jury found Mattic guilty of statutory rape, rape, and statutory sodomy. The court followed the jury's recommendation and sentenced Mattic to concurrent terms of thirty years on each count. This appeal follows.

### Point I

Mattic's first point on appeal is that the trial court erred in allowing the State to file a superseding indictment on the day of trial that was in violation of Missouri Supreme Court Rule 23.08 and § 545.300, and violated his rights to due process of law, to prepare a defense, and to a fair trial, because the superseding indictment charged an additional rape count that had not been previously charged and, in turn, caused him to receive an additional conviction and sentence. Mattic also argues that he was not allowed time to investigate or prepare a defense to the new charge.

Originally Mattic was charged by indictment with statutory rape in the first degree against M.S., in violation of § 566.032 RSMo 1994, and statutory sodomy in the

first degree against A.S., in violation of § 566.062 RSMo 1994. The indictment was for acts committed between January 1, 1995 and March 12, 1998. January 1, 1995 was the date that amendments creating the separate offenses of statutory rape in the first degree (§ 566.032 RSMo 1995) and the felony of forcible rape (§ 566.030 RSMo 1995) took effect. As a result, the elements and the punishment provisions relating to the rape of a victim who is less than twelve years of age changed. Thus, the charging instruments and jury instructions would be different for such a crime depending on whether it occurred before or after January 1, 1995.

At a hearing on November 30, 2000, the prosecutor advised the court that she would be filing a new indictment charging Mattic with an additional count of rape because it had been discovered that the time frame for the offenses actually extended back into 1994. This was discovered when defense counsel was interviewing a witness who was able to pinpoint the dates that M.S. lived at various residences. Evidence indicated M.S. was raped both when she lived at a residence on Woodlawn (before January 1, 1995) and at a residence on Gillham (after January 1, 1995). Because of the aforementioned change in the statutes, it was not possible to merely file an amendment extending the time period for the crimes. It was necessary to break the charges down into two separate offenses under two separate statutes. At the hearing, the prosecutor told the judge that she had previously informed defense counsel of this and given him a copy of the indictment she would be filing on the morning of trial.

On the morning of trial, December 11, 2000, the new indictment was filed over Mattic's objection that he would now face an additional charge and a "further range of punishment." He also requested a continuance, stating "Potentially, Judge, part of our defense would be relying upon the defense of alibi. We don't believe this gives us proper time to prepare such a defense and do further research that might be necessary." The request was denied.

Rule 23.08 provides as follows:

Any information may be amended or substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if a defendant's substantial rights are not thereby prejudiced. No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare his defense by reason of such amendment or substitution.

Section 545.300 provides as follows:

An information may be amended either as to form or substance at any time before the jury is sworn, but no such amendment shall be allowed as would operate to charge an offense different from that charged or attempted to be charged in the original information. If an indictment be held to be insufficient either as to form or substance, an information charging the same offense charged or attempted to be charged in such indictment may be substituted therefor at any time before the jury is sworn. No amendment of the information or substitution of an information for an indictment as herein provided shall cause a delay of the trial unless the defendant shall satisfy the court that such amendment or substitution has made it necessary that he have additional time in which to prepare his defense.

The language contained in Rule 23.08 and § 545.300 does not support Mattic's assertion that the rule and the statute prevent the filing of a new indictment which adds an additional charge. Looking

at the plain language, the rule and the statute clearly refer to the amendment of an information or the substitution of an information for an indictment. There is no reference to new indictments. There is a reason for this.

Informations and indictments are similar in many respects and many times are interchangeable. Both inform a defendant of the charge to sufficiently prepare a defense and provide a description of the alleged crime to protect against double jeopardy. However, there are differences. An indictment is the product of a grand jury and as a general principle of law may not be amended. *State v. Parker*, 621 S.W.2d 120, 121 (Mo.App. E.D.1981). On the other hand, an information may be amended. But, if the amendment charges a different offense, it for all purposes becomes a new information. *State v. Simpson*, 846 S.W.2d 724, 727 (Mo. banc 1993).

Section 544.250 prevents a prosecutor from filing any information charging anyone until the person is first "accorded the right to a preliminary hearing." The preliminary hearing is a means of preventing "abuse of power by the prosecution" and determining "if probable cause to charge the defendant exists." *State v. Menteer*, 845 S.W.2d 581, 583 (Mo.App. E.D.1992). Rule 23.08 and Section 545.300 acknowledge this right to a preliminary hearing and determination of probable cause by prohibiting an amendment which alleges a different offense.

There is no need for a similar rule regarding indictments. We have mentioned the fact that as a general proposition, indictments may not be amended. Additionally, a preliminary hearing is not required to establish probable cause before prosecution may proceed by indictment. Probable cause has already been estab-lished by the grand jury. *See State v. Turner–Bey*, 812 S.W.2d 799, 807 (Mo.App. W.D.1991), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997).

Having determined that neither Rule 23.08 nor Section 545.300 prohibited the filing of the new indictment, we still must determine if the court erred in denying Mattic's motion for continuance. The decision to grant or deny a request for a continuance rests squarely within the sound discretion of the trial court and a "very strong showing is required to prove abuse of that discretion; the party requesting the continuance must show prejudice." *State v. Chambers*, 891 S.W.2d 93, 100–01 (Mo. banc 1994).

The only "showing" of prejudice by Mattic is his counsel's bare statement in opposing the filing of the new indictment that he did not "believe this gives us proper time to prepare such a [potential alibi] defense and do further research that might be necessary." Nothing was presented to the trial court by motion or argument and nothing is set forth in Mattic's brief on appeal to demonstrate what advantage additional time would have provided for his defense.

Mattic was aware of the State's new approach to the case sometime before the November 30th hearing, and he was provided a copy of the new indictment that would be filed before trial. It is unclear what efforts were made between that time and the trial date of December 11th or why more time was needed. The trial court did not abuse its discretion by denying the continuance. Point I is denied.

### Point II

Mattic's second point on appeal is that the trial court erred in allowing the hearsay testimony of Tanya Johaness and por-

tions of State's Exhibit 3, the videotaped interview of M.S., pursuant to § 491.075, because this evidence violated his rights to due process, to confrontation, and to a fair trial, in that Johaness's testimony and M.S.'s statements to Julie Donelon about what A.S. told her about the sexual abuse allegations involving Mattic were inadmissible hearsay statements that improperly bolstered A.S.'s and M.S.'s in-court testimony.

Mattic actually makes three arguments under this point. First, Mattic argues that the trial court failed to restrict § 491.075 to statements and testimony of the actual victim of the offense. Specifically, Mattic claims that the testimony of Johaness concerning A.S.'s statements about what Mattic did to M.S. and the statements of M.S. to Donelon concerning what Mattic did to A.S. were inadmissible hearsay as to each victim's statements of Mattic's offenses against the other victim. Mattic argues that this evidence prejudiced him because there is a reasonable probability that this evidence affected the outcome of the trial because there was no physical evidence against him, but only A.S.'s and M.S.'s out-of-court statements and testimony to provide a basis for all the charges.

■ We first address whether this argument was properly preserved.

On November 30, 2000, a hearing was held to determine the admissibility of M.S.'s and A.S.'s out-of-court statements based on § 491.075. Tanya Johaness and Julie Donelon testified at the hearing. Johaness testified about what A.S. had told her she had witnessed Mattic do to M.S. Donelon laid the foundation for her videotaped interview with M.S. and A.S. to come into evidence. During Donelon's interview of M.S., M.S. talked about what A.S. had told her Mattic did to A.S. Defense counsel argued that the victims' statements lacked consistency and that

"there was significant confusion on the girls about what had occurred with their father and what they allege had occurred with [Mattic]." At no time during the § 491.075 hearing did Mattic argue that each girl's statements about his alleged abuse of the other were inadmissible under § 491.075.

At trial, the State asked Johaness if A.S. and M.S. had disclosed sexual abuse to her. Defense counsel objected as follows:

Judge, I think I need to go ahead and just make an objection on the 491 merits. This is a hearsay that I don't believe that the statements which is about to elicit are competent and reliable. And that by allowing them that violates my client's rights to a fair trial and due process of rights of confrontation.

The trial court overruled the objection. In his motion for new trial, Mattic alleged that the trial court erred in admitting into evidence the statements made by A.S. to Johaness after the § 491.075 hearing because the statements "were inadmissible hearsay in that, at the time the statement was made, it did not provide sufficient indicia of reliability to be admitted at trial pursuant to Section 491.075 RSMo." Mattic did not set forth in his motion for new trial the argument he now raises on appeal.

As for M.S.'s statements to Julie Donelon in the videotaped interview, which was State's Exhibit 3, when the exhibit was offered into evidence, defense counsel stated:

I need to go ahead and object on the ground of the 491 hearing essentially that the children's statements on that tape would not be reliable, the situation surrounding them. Essentially just renewing my 491 objection which we had the 491 hearing, and I objected at that time in regard to the competency of the children. Their statements in there are

irrelevant but the statements are not competent, are not reliable and essentially the same objection I made on the date of the 491 hearing, and I would like to have that to be a continuing objection.

The trial court overruled the objection. In his motion for new trial, Mattic argued that M.S.'s statement to Donelon was inadmissible hearsay in that "it did not provide sufficient indicia of reliability to be admitted at trial pursuant to Section 491.075 RSMo." Again, Mattic did not set forth in his motion for new trial the argument he raises on appeal.

 Mattic concedes that he did not properly preserve his argument concerning M.S.'s statements to Donelon, but he argues that he did properly preserve his claim of error concerning A.S.'s statements to Johaness. We find that Mattic did not properly preserve his argument concerning either girl's statements. "To preserve a claim of error in the taking of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection. The grounds asserted on appeal are limited to those stated at trial." *State v. Phillips,* 939 S.W.2d 502, 505 (Mo.App. W.D.1997) (citations omitted). An appellant may not broaden the objection he presented to the trial court, nor may he rely on a theory different from the one offered at trial. *Id.* Mattic's claim on appeal, that A.S.'s and M.S.'s statements were inadmissible because they referred to acts against the other victim, differs from Mattic's objection at trial, that the statements were inadmissible because they lacked sufficient indicia of reliability. Therefore, he has failed to preserve his claim of error on appeal.

 Because Mattic has not preserved his claim of error, discretion rests with this court to review the contention as plain error under Rule 30.20. *Id.* "The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Id.* at 505–06. In order to demonstrate plain error, Mattic must demonstrate that the error asserted so substantially affected his rights that manifest injustice or miscarriage of justice will inexorably result if the error is left uncorrected. *Id.* at 506.

Section 491.075 provides, in relevant part, as follows:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2)(a) The child testifies at the proceedings; or

(b) The child is unavailable as a witness; or

(c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

In *State v. Bass,* 81 S.W.3d 595 (Mo. App. W.D.2002), this court recently addressed the issue of whether § 491.075.1 applies solely to child victims or if it extends to child witnesses. We held that § 491.075.1 allows the admission of state-

ments of any child witness who meets the other requirements of the statute, and the statute is not limited to the statements of child victims. *Bass,* 81 S.W.3d at 603. We held that to the extent it could be interpreted otherwise, *State v. Merrill,* 990 S.W.2d 166 (Mo.App. W.D.1999), the case on which Mattic relies to support his argument, should not be followed. *Id.* at 603.

A.S. and M.S. met all of the requirements of § 491.075 in the present case. Both girls were under the age of twelve at the time of the crimes and their statements, the statements related to Chapter 566 offenses, the trial court found that the statements were sufficiently reliable (discussed further below), and both girls testified at trial. We find no error, plain or otherwise, in the trial court's admission of the testimony at issue pursuant to § 491.075.

■ Second, Mattic argues that the statements at issue improperly bolstered the trial court testimony of A.S. and M.S. Mattic did not raise this as a ground for objection to the victims' statements at trial. Therefore, we need not review this alleged error. *State v. Gillard,* 986 S.W.2d 194, 198 (Mo.App. S.D.1999).

■ Third, Mattic argues that the evidence presented at trial showed that A.S. would "get confused about what she alleged Mr. Mattic did to her and what her father did to her" and that M.S.'s allegations were "inconsistent and unsubstantiated" because another witness contradicted her account of one instance of abuse and M.S. gave an inconsistent account of which residence was the setting for one form of abuse. This is the only argument under this point that Mattic has properly preserved. Our review of the trial court's decision to admit hearsay testimony under § 491.075 is limited to a determination of whether such admission was an abuse of

discretion. *State v. Werneke,* 958 S.W.2d 314, 318 (Mo.App. W.D.1997).

■ As we stated in *Werneke,*
[t]he nonexclusive list of factors the trial court should consider when determining whether the out-of-court statements are sufficiently reliable to allow their admission includes: (1)[s]pontaneity and consistent repetition; (2) mental state of the declarant; (3) lack of motive to fabricate, and ... (4) use of terminology unexpected of a child of similar age.
*Id.* (Citations omitted.) In the present case, at the conclusion of the § 491.075 hearing, the trial court found that the statements were competent under § 491.075, and he stated that 1) he found the statements of the victims were consistent; 2) the statements were not always spontaneous, "but they were consistent in what took place"; 3) the statements were made in a nonthreatening environment with nonleading questions; 4) the statement included "the types of activities that unless something had happened, the child wouldn't have known what to say"; 5) the interviewers were all professionals trained in interviewing children; and 6) there was a lack of any motive to fabricate.

■ "[I]n cases involving such young victims and sensitive and embarrassing subject matters, 'it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory.'" *Id.* at 319. (Citation omitted.) Inconsistencies or contradictions in statements by a young child relating a sexual experience do not, by themselves, deprive the testimony of all probative force. *Id.*

We find that the trial court considered all the relevant factors and did not abuse its discretion in determining that the time, content and circumstances of the statements at issue provided sufficient indicia of reliability. Point II is denied.

The judgment of the trial court is affirmed.

SMITH and NEWTON, JJ., concur.