**STATE of Missouri, Respondent,**

v.

**Clifton CLOYD, Appellant.**

**No. WD 66555.**

Missouri Court of Appeals,
Western District.

Sept. 18, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 30, 2007.

As Modified Oct. 30, 2007.

Application for Transfer Denied
Dec. 18, 2007.

S. Kate Webber, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel McPherson, Assistant Attorney General Jefferson City, MO, for respondent.

Before HOWARD, C.J., and BRECKENRIDGE and ELLIS, JJ.

VICTOR C. HOWARD, Chief Judge.

After a jury trial, Clifton Cloyd was convicted of one count of domestic assault in the second-degree under section 565.073.[1] He now appeals, alleging the trial court erred in permitting the State to proceed on a superceding indictment that charged felony domestic assault rather than misdemeanor assault, as did the initial indictment. He also claims that the State lacked sufficient evidence to prove each element of domestic assault because the victim did not "reside" with him.

## Facts and Procedural Background

After being kicked out of her mother's home, the victim, A.W., walked toward a liquor store in Kansas City, Missouri. Cloyd pulled up next to her while driving a white Range Rover and the two began to talk. Cloyd offered to permit A.W. to stay at his house and to provide her transportation to and from beauty school. A.W. accepted and the two drove back to Cloyd's house. At this time, A.W. had "just a few" of her personal effects with her.

The two slept together in the same bed and had consensual sexual intercourse on one occasion, although at trial A.W. testified the two did not have a "sexual relationship." At trial, defense counsel asked A.W. if she was residing with Cloyd. She responded that she "was just staying." Upon further questioning, she responded that she was "living with him." Several days later,[2] the two had an altercation. Cloyd slapped A.W. in the face with an open hand. The State asserted that Cloyd then approached the kitchen chair where A.W. was sitting and demanded oral sex.[3] She declined. Cloyd then went into the living room, retrieved a pistol, held it to her head, and again demanded oral sex. When she declined a second time, Cloyd replaced the gun, came back into the kitch-

---

1. All citation to statutes refers to RSMo (2000) and all citation to rules refers to Missouri Supreme Court Rules (2007).

2. At one point A.W. told authorities that she stayed "no longer than three days." At trial, however, she testified that she stayed with him "maybe a week."

3. The jury disbelieved portions of the remainder of the facts.

en, grabbed her by the hair, and banged her head against the stove approximately a half dozen times. He told her "Bitch, don't you know I will kill you." Cloyd then began to punch and kick her. He then left, locking her in the kitchen without a means of escape. The next day, Cloyd drove A.W. back to her mother's home.

The State initially charged Cloyd with forcible sodomy, unlawful use of a weapon, and assault in the third-degree. A grand jury returned an indictment for these initial charges on June 24, 2005. An information in lieu of an indictment was filed on November 1, 2005, charging Cloyd with attempted forcible sodomy, unlawful use of a weapon, and assault in the third-degree, a misdemeanor. The grand jury then issued a superseding indictment on November 18, 2005, charging Cloyd with attempted forcible sodomy, unlawful use of a weapon, and domestic assault in the second-degree, a felony. The trial court overruled Cloyd's motion to dismiss when he objected to the superceding indictment's alteration of the charge from misdemeanor assault to felony domestic assault. Then, on the first day of trial, December 5, 2005, the State filed an information in lieu of the second indictment to correct a typographical error pertaining to one of Cloyd's past offenses, which was relevant to determine persistent offender statutes.

The jury sided with Cloyd's version of events on the forcible sodomy and unlawful use of a weapon charge; however, it returned a guilty verdict on the domestic assault charge. The Court sentenced Cloyd to twelve years imprisonment to be served concurrently with a separate federal sentence. Cloyd now appeals the second-degree domestic assault conviction.

### Superceding Indictment

■ Cloyd claims that the trial court erred when it permitted the State to proceed on a superceding indictment because doing such violated his constitutional right to a fair trial. His argument centers on a wholly erroneous interpretation of Rule 23.08. Rule 23.08, however, is inapplicable to Cloyd's claim. Cloyd's complaint is not that the superceding indictment was substituted for an information on the day of trial, but that the court permitted a superceding indictment with a new or additional count nearly two weeks before trial. Rule 23.08 states in pertinent part that "[a]ny information may be amended or an information may be substituted for an indictment at any time before verdict or finding if: ... [n]o additional or different offense is charged and ... [a] defendant's substantial rights are not thereby prejudiced." Rule 23.08. The error complained of here, is that the substituted indictment charged a new or different offense. The rule simply does not govern superceding indictments. *State v. Mattic,* 84 S.W.3d 161, 165–66 (Mo.App. W.D. 2002). No other authority, besides Rule 23.08, is provided for the claim that permitting a superceding indictment violates his constitutional rights.

■ In his response brief, Cloyd admits as much. He then pushes forward by arguing he was nonetheless prejudiced by the superceding indictment in that he was unable to timely prepare a defense. However, Cloyd filed no motion for continuance. We, therefore, deem this claim abandoned. A bare statement that the defendant lacked sufficient time to prepare a defense is insufficient. *Id.* at 166. Cloyd also argues in his response brief that the superceding indictment was essentially an "upgrade" of the assault charge and was, thus, an amendment. This unsupported *non sequitur* is far removed from the law and need not be discussed further.

### Sufficiency of the Evidence for the Residing Element

Cloyd next claims there was insufficient evidence to support his conviction. He argues that the victim was not a "family or household member" as defined by the Adult Abuse Act.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the judgment. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). We only reverse upon a showing that no reasonable juror could have found the defendant guilty beyond a reasonable doubt. *Id.* However, the proper construction of a statute is a question of law and is thus reviewed *de novo. Doe I v. Phillips,* 194 S.W.3d 833, 841 (Mo. banc 2006).

Domestic assault in the second-degree can only occur where the defendant attempts to or causes injury to a "family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature." § 565.073.1. Under the statute, "family or household member" is defined as:

spouses, former spouses, adults related by blood or marriage, adults who are presently residing together or have resided together in the past, an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the victim, and adults who have a child in common regardless of whether they have been married or have resided together at any time.

§ 455.010(5).[4] The adult abuse statute does not define the term "residing."

The sole issue before us is whether the State produced sufficient evidence that a reasonable juror could find that the victim and Cloyd resided together prior to the assault. Where language used in a criminal statute is unambiguous, we attach to that statute its plain and ordinary meaning without resorting to statutory construction. *State v. Daniel,* 103 S.W.3d 822, 826 (Mo.App. W.D.2003). We may determine a word's plain meaning from its dictionary definition. The word "reside" generally means:

To settle oneself or a thing in a place, to be stationed, to remain or stay, to dwell permanently or continuously, to have a settled abode for a time, to have one's residence or domicile; specifically, to be in residence, to have an abiding place, to be present as an element, to inhere as a quality, to be vested as a right.

BLACK'S LAW DICTIONARY 1308 (6th ed.1990).

A.W. testified that she had stayed with Cloyd "maybe a week," although she had previously told a police officer that she had stayed with Cloyd only "briefly" and "no longer than three days." She had with her "just a few things." When questioned if she was residing with Cloyd, A.W. originally stated, "I was just staying."[5] Upon further questioning, she stated that she was living with Cloyd. She also testified that after her ordeal with Cloyd she "wanted to go home," presumably to her mother's home.

Cloyd claims no reasonable juror could have found that A.W. was residing with him. Residence, so he claims, requires physical presence and the intent to remain

**4.** The jury was only instructed to return a verdict of guilty if it found the victim and defendant "resided together."

**5.** It is worthy of mention that in common vernacular the word "stay" is not limited to short-term, transient presence. While techni-

cally incorrect, many use the term "staying" as a substitute for the word "living" or "residing." For example, the phrase "I'm staying over on 18th Street" could mean, depending on the context of the conversation, that the declarant is residing on 18th Street.

indefinitely. *See State ex rel. Quest Communications Corp. v. Baldridge*, 913 S.W.2d 366, 369 (Mo.App. S.D.1996). According to Cloyd, all of the evidence indicates that A.W. did not intend to remain at his home indefinitely.

While the term "reside" may not be clear in every case, there is adequate evidence to conclude that A.W. was residing with Cloyd prior to the assault. At least as applied to the facts of the current case, the term "presently residing together" is unambiguous and is broad enough to encompass A.W.'s living arrangements. By any reasonable and ordinary definition, the term "reside" includes both physical presence and intent to remain at that place for a significant period of time. There is no question that A.W. was physically present at Cloyd's dwelling. Furthermore, A.W. testified that she was "living" with Cloyd, not merely visiting or staying with him for a short-term, definite period. The testimony that A.W. was living with Cloyd is sufficient to demonstrate her intent to "reside" with him.

Additionally, the application of a broad meaning for the phrase "presently residing together" is logically related to the goal of the statute. The obvious legislative intent behind the domestic assault statute is to provide additional protection for individuals who are vulnerable to abuse due to their family, romantic, or domestic relationships. A.W. had clearly become vulnerable due to her cohabitation with Cloyd. The domestic assault statute is not meant to protect only individuals in traditional social relationships—its aim is to protect those who become vulnerable due to their chaotic relationships. *See Daniel*, 103 S.W.3d at 827. These tumultuous arrangements are difficult to describe and categorize, and it is unlikely that the legislature intended the narrow reading that Cloyd now proposes.

## Conclusion

The judgment of the trial court is affirmed.

BRECKENRIDGE and ELLIS, JJ., concur.