STATE of Missouri, Respondent,

v.

Stanton GAINES, Appellant.

No. WD 71319.

Missouri Court of Appeals,
Western District.

June 14, 2011.

Susan Lynn Hogan, Kansas City, for appellant.

Shaun J. Mackelprang and Jamie Pamela Rasmussen, Jefferson City, for respondent.

Division Four: LISA WHITE HARDWICK, P.J., JAMES M. SMART, JR., J., and DAREN L. ADKINS, SP.J.

JAMES M. SMART, JR., Judge.

Stanton Gaines ("Gaines") was convicted after a jury trial of one count of first-degree statutory rape, section 566.032, two counts of first-degree statutory sodomy, section 566.062, and one count of first-degree child molestation, section 566.067.[1] On appeal, Gaines contends the circuit court erred in entering judgment against him because of improper evidentiary rulings it made during his jury trial. For reasons explained below, we find no error and affirm the judgment of conviction.

## Factual Background[2]

Gaines was charged by information in lieu of indictment in Jackson County Circuit Court for sexually assaulting C.J. in 2004 when C.J. was twelve years old. Specifically, Gaines was charged with

---

1. Statutory citations are to the Revised Statutes of Missouri 2000, as updated by the 2010 Cumulative Supplement.

2. "Defendant does not challenge the sufficiency of the evidence to support his convictions; thus, a brief summary of the ... facts of the case will suffice for our review." *State v. Johnson,* 150 S.W.3d 132, 134 (Mo.App.2004). Furthermore, "[w]e view the facts in the light most favorable to the verdict." *State v. Allison,* 326 S.W.3d 81, 85 (Mo.App.2010).

three counts of first-degree statutory sodomy for placing "his penis in C.J.'s mouth," for placing "his mouth on C.J.'s vagina," and for placing "his penis in C.J.'s anus." Gaines was also charged with one count of first-degree statutory rape for having "sexual intercourse with C.J.," and one count of first-degree child molestation for placing "his mouth on C.J.'s breast."

This matter was tried before a jury on May 11–15, 2009. The State presented copious amounts of evidence and testimony to support its respective theory of the case.

C.J. testified at trial how Gaines, a family friend, sexually assaulted her on more than one occasion in early 2004 when she was twelve years old. Evidence was presented at trial that C.J. had cerebral palsy and also had a disability (microceophaliotic) that left her with the mental capacity of a third grader.

C.J.'s mother ("Mother") was the sole care provider for C.J. in 2004. During that time, Mother enlisted the help of Gaines to care for C.J. when she was unable to. It was during these times when Gaines was alone with C.J. that he sexually assaulted her.

Prior to C.J. reporting the sexual abuse, there was an incident in January 2004 where C.J.'s sister ("Sister") (thirteen years old at the time) came home to find their mother smoking crack cocaine with Gaines. This upset Sister immensely, so much so that she moved out of Mother's and C.J.'s house.

In March 2004, C.J. told her mother that Gaines had sexually assaulted her, which triggered a series of events wherein C.J. reported her assault to the authorities. The State presented evidence at trial that during the investigation of this sexual assault, semen was found on C.J.'s pajamas that matched Gaines's DNA.

After being arrested for sexually assaulting C.J., Gaines told police: "I fess up. The act did actually occur even to the point of possible penetration, but of no activity to mine. [C.J.] has manipulated me all the way through this."

At the conclusion of trial, the jury found Gaines guilty of each charged count, with the exception of Count II (first-degree statutory sodomy), which alleged that Gaines "placed his mouth on [C.J.]'s vagina."

Subsequently, the trial court sentenced Gaines to seventeen years' incarceration for both statutory sodomy convictions, and a seventeen year sentence for the statutory rape conviction. Finally, the trial court sentenced Gaines to fifteen years' for the child molestation conviction. All sentences were ordered by the trial court to be served concurrently. Gaines now appeals his judgment and sentence.

Further factual details will be outlined as relevant in the analysis section of this opinion.

## Analysis

■ In his first Point Relied On, Gaines argues that the trial court "abused its discretion in sustaining the State's objection to defense counsel asking [Mother] whether her daughter, [Sister], blamed Appellant for [Mother's] drug use ... because the ruling denied him the opportunity to show that [Sister] blaming Appellant influenced [Mother] and that [Mother] was biased against Appellant for reasons other than the alleged offenses."

We recently outlined our applicable standard of review for this Point Relied On in *State v. Gaines:*

The trial court has broad discretion in deciding the scope of cross-examination. We will not interfere absent a clear abuse of discretion. In matters involv-

ing admission of testimony, review is for prejudice, not mere error. Reversal will result only if error was so prejudicial that it deprived defendant of a fair trial. 316 S.W.3d 440, 447 (Mo.App.2010) (citations and quotations omitted).

On appeal, Gaines argues that he did not receive a fair trial because his trial counsel was precluded from asking "[Mother] whether [Sister] blamed Mr. Gaines for her mother's renewed use of crack cocaine." We reject Gaines's argument on appeal for numerous reasons. To begin with, we do not believe that the trial court erred in excluding this specific evidence because of the manner in which it was presented at trial. Here, the challenged testimony was the following:

Q. [Gaines's trial counsel]: [W]hat we were just talking about involved [Sister] coming up to your room, seeing you using crack with Stanton Gaines in the room, true?

A. [Mother]: That's correct.

Q. Okay. And [Sister] was very angry, true?

A. Yes.

Q. And [Sister] was not just angry at you, [Sister] was very angry at Stanton Gaines also, true?

A. She was disappointed in Stanton. She was angry with me.

Q. Okay. And it's also true she blamed Stanton Gaines for your getting into drug use again, true?

[The State]: Your Honor, may we approach?

. . . .

[The State]: He's asking her to speculate about what somebody else is thinking. I think that's an inappropriate question.

[Gaines's trial counsel]: I think if she was told that by [Sister], that's not speculation.

[The State]: Then it would be hearsay.

[Gaines's trial counsel]: It's not hearsay. It's what's—it's what [Sister] is saying to her. Not offering for the truth of the matter. I'm only offering it as—

THE COURT: What are you offering it for then?

[Gaines's trial counsel]: I'm not offering it for any—for the evidence that shows of the anger that was involved on the part of [Sister].

THE COURT: So you're offering it for the truth of the matter asserted?

[The State]: You've already indicated that's your defense.

THE COURT: Objection is sustained.

■ "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends upon the veracity of the statement for its value." *State v. Sutherland*, 939 S.W.2d 373, 376 (Mo. banc 1997). Such statements are generally inadmissible unless they fall within a recognized exception to the hearsay rule. *Id.* "Hearsay evidence is objectionable because the person who makes the offered statement is not under oath and is not subject to cross-examination." *State v. Bowens*, 964 S.W.2d 232, 240 (Mo.App.1998).

On appeal, Gaines fails to even address the trial court's ultimate ruling that the evidence in question as presented would have been hearsay. Simply put, Gaines attempted to illicit testimony from Sister *through* Mother by having Mother state what Sister thought about what caused Mother's drug use. But this testimony would have been inadmissible hearsay, because Sister "did not testify at trial, and the only possible purpose for that testimony was to serve as proof of the matter

asserted." *State v. Mozee,* 112 S.W.3d 102, 108 (Mo.App.2003).[3]

It goes without saying that had Gaines wanted the jury to hear evidence about Sister's opinion as to what caused Mother's drug use, Gaines should have subpoenaed Sister to testify at trial as it pertained to that very subject. On appeal, Gaines does not contend that Sister was somehow unavailable to testify at trial, nor does he attempt to demonstrate that this evidence fell into an exception to the hearsay rule.

Even assuming that Gaines's trial counsel had successfully subpoenaed Sister to testify regarding this subject at trial, we question whether Sister's testimony would have provided Gaines a viable defense to the instant charges. Specifically, it is Gaines's theory that "[w]hether [Sister] blamed Mr. Gaines was important to the defense, because [Mother] may well have been motivated to fabricate her testimony about [C.J.]'s initial disclosures, in an attempt to curry favor with [Sister]." But the State's most important witness was the victim herself, who testified in detail as to how Gaines sexually assaulted her. Accordingly, it seems at best tangential to demonstrate that Mother was motivated to make up the story of the victim's assault to "curry favor with [*Sister*]," someone who was not involved in these crimes whatsoever.

■ Furthermore, it must be noted that Gaines's trial counsel was given extensive leeway by the trial court to elicit considerable testimony from Mother that conveyed the idea that Sister was upset that she found her mother smoking crack with Gaines. Specifically, Gaines's trial counsel succeeded in eliciting testimony from Mother at trial that immediately after this

incident Sister threatened to call the police if Gaines did not leave the house immediately. This evidence allowed Gaines's trial counsel to argue in closing the following argument that he now suggests on appeal he was precluded from presenting to the jury:

> They had a motive to get Mr. Gaines out of their lives, to get him out of their mother's life because [Sister]—you heard [Mother] admit it, [Mother] admitted that [Sister] was angry at Stanton Gaines because of the drug use, enough to threaten to call the police on her and Stanton to leave the house. That was her objective....

Finally, beyond the victim's own testimony that inculpated Gaines, there was a host of other overwhelming evidence that was presented by the State at trial to prove Gaines's guilt beyond a reasonable doubt. On appeal, Gaines fails to address the fact that it is his burden to somehow demonstrate prejudice in order to be entitled to relief based on an alleged evidentiary error by the trial court. *Gaines,* 316 S.W.3d at 447. The most damning physical evidence presented by the State at trial was that semen was found on the victim's pajama pants that matched Gaines's DNA. But we need not outline all of the testimonial and physical evidence that was presented by the State at trial that implicated Gaines, because *Gaines himself* admitted to the police that he sexually assaulted the victim.

For all of the aforementioned reasons, we conclude that the trial court did not err in refusing to allow the hearsay testimony challenged by Gaines on appeal. Point One is denied.

---

**3.** Moments after the trial court made its ruling that the testimony in question was hearsay, Gaines's own trial counsel made statements on the record conceding that this testimony would have been hearsay. ("That's not hearsay. That part—the other one I'll give you might be, but this one is not hearsay....")

In Point Two, Gaines argues that the "trial court plainly erred in admitting the testimony of Julie Donelon [and certain other witnesses] as to statements [C.J.] made about the alleged offenses, and in admitting the videotape of the Child Protection Center forensic interview of [C.J.], because the statements and videotape were inadmissible as substantive evidence under sections 491.075 and 492.304 ... in that [C.J.] was 17 by [the] time of trial and therefore was not a child when the statements were admitted."

On appeal, Gaines concedes that we may review his claim only for plain error in light of the fact that he failed to object at trial to this evidence based on this specific theory. "Although the defense preserved a claim of error as to the admissibility of the videotaped statements to Julie Donelon based on insufficient indicia of reliability, the issue of [C.J.]'s age was not presented as an objection in the trial court, and therefore is not preserved for review."

■ "To preserve a claim of error in the taking of evidence, an accused must object with sufficient specificity to apprise the trial court of the grounds for the objection. The grounds asserted on appeal are limited to those stated at trial." *State v. Phillips*, 939 S.W.2d 502, 505 (Mo.App. 1997) (citations omitted). "An appellant may not broaden the objection he presented to the trial court, nor may he rely on a theory different from the one offered at trial." *State v. Mattic*, 84 S.W.3d 161, 168 (Mo.App.2002).

This court recently outlined the applicable standard of plain error review:

"Review of plain error under Rule 30.20 involves a two-step process. First, we must determine if the claim on its face establishes substantial grounds to find that manifest injustice or miscarriage of justice has resulted." *State v. Lewis*, 243 S.W.3d 523, 525 (Mo.App. W.D.2008)

(citation omitted). Not all prejudicial error can be deemed plain error. *State v. Calhoun*, 259 S.W.3d 53, 58 (Mo.App. W.D.2008). "Plain error is evident, obvious, and clear error." *Id.* If plain error is evident on the face of the claim, then we may proceed to consider whether or not a miscarriage of justice or manifest injustice will occur if left uncorrected. *Lewis*, 243 S.W.3d at 525. Where no plain error appears on the face of the claim, we should decline to exercise our discretion to review the claim. *Id.*

*Gaines*, 316 S.W.3d at 449.

■ Here, the gravamen of Gaines's claim on appeal is that the victim's out-of-court statements in question were inadmissible at trial because of the victim's age during *trial*, not at the time she made the statements in question when she was indisputably under the age of fourteen. Section 491.075 states the following:

1. A statement made by a child under the age of fourteen relating to an offense under chapter 565, 566, 568 or 573, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) (a) The child testifies at the proceedings[.]

Furthermore, section 492.304 provides:

1. [T]he visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense

under the provisions of chapter 565, 566 or 568 is admissible into evidence[.]

. . . .

3. If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and the child testifies at the proceeding, it shall be admissible in addition to the testimony of the child at the proceeding whether or not it repeats or duplicates the child's testimony.

On appeal, Gaines challenges the evidence in question by arguing that "Sections 491.075 and 492.304 RSMo only allow the State to bolster the testimony of its child witnesses, and [C.J.], age 17 by the time of trial, was not a child witness." We disagree.

Here, Gaines cites to no authority that has held that the age of the victim *during the defendant's trial* is relevant in determining whether the victim's out-of-court statements made while under the age of fourteen should be admissible evidence pursuant to sections 491.075 and 492.304. Indeed, both statutes are clear and unambiguous that the relevant time frame called into question is how old the victim was when the statement in question is made. "When interpreting a statute, the primary goal is to give effect to legislative intent as reflected in the plain language of the statute." *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010). "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *Id.* Nowhere does the lan-

guage of section 491.075 or 492.304 speak of the age of the victim during the defendant's trial, but rather clearly states that it only pertains to how old the victim was "when" the child "made" the out-of-court statement. *See* section 491.075.1 ("A statement *made* by a child under the age of fourteen relating to [the charged crimes] . . . is admissible in evidence[.]" (emphasis added)); *see also* section 492.304 ("[T]he visual and aural recording of a verbal or nonverbal statement of a child *when* under the age of fourteen[.]" (emphasis added)).[4]

Here, Gaines ignores that the age of the victim is not relevant in this analysis because the victim's live, in-court testimony was indisputably admissible at trial. Rather, the relevant question was whether the victim's out-of-court statements were admissible, and Gaines does not dispute that all of these statements were made by the victim while she was under the age of fourteen. Furthermore, Gaines simply fails to demonstrate that the legislature was concerned with how old the victim would have been at the *date of the defendant's trial,* because none of the statutory language cited by him speaks to that subject whatsoever.

■ "Section 491.075 'reflects a policy determination' by the legislature that in some child abuse cases, the victim's out-of-court statements may 'be *more* reliable than the child's testimony at trial, which may suffer distortion by the trauma of the courtroom setting or become contaminated

4. Indeed, no case law was found that has directly tackled the precise issue presented here today, but cases interpreting these very statutes are consistent with our analysis today. "Section 492.304 allows for the admissibility of a videotape in a child sexual abuse case *if the recording was made when the child was under the age of* fourteen, when certain other requirements are met." *State v. Partain*, 310 S.W.3d 765, 768 n. 1 (Mo.App.2010)

(emphasis added); *see also State v. Mattic*, 84 S.W.3d 161, 169 (Mo.App.2002) (emphasis added) ("A.S. and M.S. met all of the requirements of § 491.075 in the present case. Both girls were under the age of twelve *at the time of the crimes and their statements,* the statements related to Chapter 566 offenses, the trial court found that the statements were sufficiently reliable . . ., and both girls testified at trial.").

by contacts and influences prior to trial.'" *State v. Benwire,* 98 S.W.3d 618, 624 (Mo. App.2003) (*quoting State v. Wright,* 751 S.W.2d 48, 52 (Mo. banc 1988) (emphasis in original)). "Furthermore, it is not uncommon for there to be some contradiction or memory lapses during the testimony of a child of tender years." *Id.* (quotations and citations omitted).

Were we to instead focus on the age of the victim at the time of the defendant's trial in determining whether the victim's out-of-court statements were admissible, we would frustrate the clear legislative purpose of sections 491.075 and 492.304. Gaines argues that once a child victim turns fifteen, none of the child's previous out-of-court statements are admissible at trial regardless of any extenuating circumstance. But this argument ignores the factors expressly outlined in section 491.075(2)(b), such as whether the "child is unavailable as a witness," or in section 491.075(2)(c), such as whether "significant emotional or psychological trauma ... would result from testifying in the personal presence of the defendant."

Nor would making the dichotomy suggested by Gaines in sections 491.075 and 492.304 make sense from a practical standpoint. For example, it would certainly be possible for a very long delay to ensue between when a child victim initially reports the sexual abuse (and the child's statement is videotaped), and when the trial of the defendant occurs. As the period of time between the sexual attack and trial grows longer, it only makes sense that the need to use these out-of-court statements becomes more critical to ensure the victim's testimony does not "become contaminated by contacts and influences prior to trial." *Benwire,* 98 S.W.3d at 624 (*quoting Wright,* 751 S.W.2d at 52).

Gaines argues on appeal, without any supporting authority whatsoever, that "we do expect *teenagers* and adults to provide precise, articulate, and thorough testimony in court, and the state cannot bolster the testimony of teenagers and adults as it can the testimony of children." (Emphasis added.) But it is common sense that our memories of childhood fade and distort over time as we grow older, so the idea that we are somehow able to articulate traumatic events that occurred in our childhood *better* when we are adults seems divorced from reality. Ultimately, it is enough for this court to say that because the statute is unambiguous in this regard (for the reasons already explained above), we need not reach these policy concerns that are for the legislature.

To support his argument on appeal that child victims of sexual crimes should not receive the benefit of sections 491.075 and 492.304 if they are over the age of fourteen at the time of the defendant's trial, Gaines lastly focuses on the facts pertinent to his case. Specifically, Gaines states that there was no need to bolster the victim's trial testimony in this specific case because while "[t]he state's direct examination of [C.J.] was brief, ... [C.J.] was able to identify Mr. Gaines as the person she claimed had sexual contact with her when she was twelve." But the fact that the victim *in this case* was able to articulate the events that occurred to her when she was sexually assaulted at twelve years of age by Gaines does not translate into the conclusion that each and every child sex victim will be able to do so after they turn fourteen. Rather, sections 491.075 and 492.304 reflect that discretion was given to the trial court to determine when the State is allowed to use these out-of-court statements within the confines outlined in the language of the specific statutes.[5]

---

**5.** Although he argues in a cursory fashion that

the "State obtained an undue advantage when

In any event, Gaines is unable to demonstrate a manifest injustice or miscarriage of justice in this case. "The plain error rule is to be used sparingly." *State v. Steele*, 314 S.W.3d 845, 854 (Mo.App. 2010) (quotation omitted). "It must be invoked on a case by case basis, and there must be a sound, substantial manifestation, a strong, clear showing, that injustice or a miscarriage of justice resulted." *Id.* "Under a plain error analysis, a manifest injustice is shown where the trial court's error in admitting the evidence was outcome determinative." *State v. Jones*, 299 S.W.3d 324, 328 (Mo.App.2009) (quotation omitted). "Plain error must be evident and obvious and affect the substantial rights of the defendant." *Id.*

Here, Gaines cannot demonstrate that he was prejudiced, because the other evidence presented by the State at trial was nothing short of overwhelming. In addition to the victim's live testimony that directly implicated Gaines in the crimes he was convicted of, Gaines argues that "the State's case consisted *only* of evidence that [C.J.] had either an absent or thinning posterior hymenal ring, that she tolerated a speculum examination, *and that a spot of semen containing Mr. Gaines's DNA was found on the cuff of the back of the left leg of [C.J.]'s pajama pants.*" We respectfully disagree with Gaines's assertion that this physical evidence as it pertained to a twelve-year old was "limited" and did not even "implicate Mr. Gaines." Rather, all of this evidence, when taken in conjunction was Gaines's confession to the police that he sexually assaulted the victim, can be deemed only as overwhelming because it is hard to imagine what more the State could have been expected to present at trial in order to demonstrate that Gaines was in fact guilty of the charged crimes.

For all of the aforementioned reasons, we must reject Gaines's second Point Relied On.

## Conclusion

The judgment of the circuit court is hereby affirmed.

All concur.

---

it bolstered [C.J.]'s testimony with her prior consistent statements," Gaines has never attempted to argue, either before the trial court or on appeal, why the out-of-court statements made by the victim were needlessly duplicative. It goes without saying that it is not this court's role to attempt to develop arguments not raised by Gaines's appellate counsel, because to do so would be to become an advocate for him "by speculating on facts and arguments that have not been asserted." *State v. Steele*, 314 S.W.3d 845, 853 (Mo.App. 2010) (quotation omitted).

Regardless, it is worth noting that the Missouri Supreme Court recently held that "Section 491.075 does not encourage improper bolstering." *State v. Biggs*, 333 S.W.3d 472, 479 (Mo. banc 2011). Improper bolstering occurs when the out-of-court statement of a witness is offered solely to be duplicative or corroborative of trial testimony. *State v. Seever*, 733 S.W.2d 438, 441 (Mo. banc 1987). But because Gaines has failed to even attempt to demonstrate that the evidence in question was presented merely to be duplicative or corroborative of trial testimony, we must reject any insinuation by Gaines that the trial court plainly erred in admitting this evidence because it needlessly bolstered the victim's trial testimony.