NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

REID DUARD HAYES,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12801
Trial Court No. 3AN-12-03709 CR

O P I N I O N

No. 2678 — September 18, 2020

Appeal from the Superior Court, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Michael Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Patricia L. Haines, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

Reid Duard Hayes was convicted, following a jury trial, of three counts of first-degree sexual abuse of a minor, three counts of second-degree sexual abuse of a minor, and one count of attempted second-degree sexual abuse of a minor for sexually abusing three of his girlfriend's underage daughters over the course of several years.

Hayes raises six claims on appeal. The first two claims require us to construe Alaska Evidence Rule 801(d)(3) — the evidence rule authorizing the admission of recorded statements by child victims of crime, provided that certain foundational requirements are met. Specifically, we must decide whether the requirement that the child victim be "less than 16 years of age" applies at the time when the statement is taken or at the time of trial when the victim is called to testify. For the reasons explained here, we conclude that the applicable time period is when the recorded statement was taken.

We are also required to decide whether the use of an investigating officer as the interviewer in a child advocacy center interview constitutes a *per se* bar to admitting those interviews under Evidence Rule 801(d)(3). For the reasons explained here, we conclude that the fact that the interviewer is an investigating officer is an important factor for the court to consider when evaluating the reliability and admissibility of the child advocacy center interview, but we do not agree with Hayes that it is a *per se* bar to admissibility.

Hayes raises four other claims of error, relating to (1) the State's use of a child sexual abuse expert; (2) N.E.'s trial testimony; (3) a discovery matter; and (4) a special condition of probation. For the reasons explained here, we reject each of these claims of error.

*Background facts*

In 2007, Hayes began dating and living together with a woman who had five daughters: S.D. (thirteen years old), N.E. (nine years old), K.E. (seven years old), A.E. (four years old), and L.E. (under one year old).

According to later trial testimony, Hayes began sexually abusing S.D. around the summer of 2008, when she was fourteen years old. S.D. testified regarding an incident in which Hayes started kissing and touching her while they were watching a movie and then penetrated her vagina with his penis. S.D. recalled at least one other specific incident of sexual penetration, although she testified that it happened many more times.

N.E. testified that Hayes first sexually abused her when she was around twelve years old. As was the case with S.D., the sexual abuse took place while N.E. and Hayes were watching a movie. The first time Hayes touched her vagina, they were laying on the bed facing the television, and he moved his hand down her stomach under her clothes until he reached her vagina; he placed his fingers on top of her vagina for about five to ten minutes. Although she testified there were three to five "really similar" incidents, N.E. specifically remembered the last occurrence, when he penetrated her with two fingers.

K.E. testified to an incident in late 2011 or early 2012, when Hayes moved his hand towards K.E.'s vagina while hugging her goodnight. Because K.E. was wearing tight-fitting "skinny jeans," Hayes was unable to get his hand inside her pants. K.E. grabbed Hayes's hand and moved it away, telling him that she "wasn't his girlfriend; [she] was his daughter."

Shortly thereafter — in January 2012 — the girls disclosed the sexual abuse to their aunt, who then brought them to Alaska CARES, a child advocacy center (CAC).

There, two detectives conducted forensic interviews with S.D., N.E., and K.E., as well as with their younger sister A.E., then eight years old.

Hayes was later indicted on three counts of first-degree sexual abuse of a minor, three counts of second-degree sexual abuse of a minor, and one count of attempted second-degree sexual abuse of a minor.[1]

Hayes's trial was held in June 2016. All three victims — S.D., N.E., and K.E. — testified at trial, as did A.E. The Alaska CARES videos of N.E. and K.E. were also played for the jury as part of the State's case-in-chief. Hayes maintained his innocence, and his defense centered on discrediting the girls. The victims' mother, who was engaged to Hayes at the time of trial, testified in support of Hayes's account.[2]

Ultimately, a jury found Hayes guilty of all counts. He was sentenced to 39 years to serve. The court also imposed a 10-year term of probation with general and special conditions.

This appeal followed.

*Hayes's argument that Alaska Evidence Rule 801(d)(3) should be construed to only apply to victims who are under the age of sixteen at the time of trial*

Alaska Evidence Rule 801(d)(3) allows the State to admit the videotaped statement of a child victim as part of its case-in-chief. Traditionally, such evidence would be barred by the prohibition against hearsay because it is an out-of-court statement

---

[1]  AS 11.41.434(a)(1), (a)(3)(A), (a)(3)(B); AS 11.41.436(a)(1), (a)(5)(A), (a)(5)(A); and AS 11.41.436(a)(5)(A) & AS 11.31.100, respectively.

[2]  In the intervening years, the victims' mother had lost custody of her children.

introduced for the truth of the matter asserted.[3]  But Rule 801(d)(3) exempts this evidence from the hearsay rule if it is "a recorded statement by the victim of a crime who is less than 16 years of age" and satisfies eight additional criteria.  In full, the rule provides:

> The statement is a recorded statement by the victim of a crime who is less than 16 years of age and
>
> (A) the recording was made before the proceeding;
>
> (B) the victim is available for cross-examination;
>
> (C) the prosecutor and any attorney representing the defendant were not present when the statement was taken;
>
> (D) the recording is on videotape or other format that records both the visual and aural components of the statement;
>
> (E) each person who participated in the taking of the statement is identified on the recording;
>
> (F) the taking of the statement as a whole was conducted in a manner that would avoid undue influence of the victim;
>
> (G) the defense has been provided a reasonable opportunity to view the recording before the proceeding; and
>
> (H) the court has had an opportunity to view the recording and determine that it is sufficiently reliable and trustworthy and that the interests of justice are best served by admitting the recording into evidence.

At the time of the interviews in this case, N.E. was thirteen years old.  But by the time of trial, over four years later, N.E. was eighteen years old.

The State asked the court to admit K.E.'s and N.E.'s video-recorded statements under Rule 801(d)(3).  Hayes objected to N.E.'s video-recorded statements, arguing that the rule's requirement that the child victim be "less than 16 years of age"

---

[3]  *See* Alaska Evid. R. 801(a)-(c) & 802.

should be interpreted to mean that the victim is less than sixteen years of age *at the time of trial*.[4]  The State argued that this language should be interpreted to mean that the victim was less than sixteen years of age *at the time the statement was made*.  The trial court agreed with the State and admitted the statements.  Hayes now appeals that ruling.

In interpreting a statute, we examine *de novo* "the meaning of the statute's language, its legislative history, and its purpose" in light of "reason, practicality, and common sense."[5]  Under Alaska's "sliding scale" approach to statutory interpretation, "the plainer the statutory language is, the more convincing the evidence of a contrary legislative intent must be."[6]

We acknowledge that the relevant language of Rule 801(d)(3) is subject to two interpretations.  Because the rule describes the age of the victim in the present tense ("by the victim . . . who *is* less than 16 years of age"), it is theoretically possible to read the rule, as Hayes does, as referring to the victim's age at the time of trial.  But the present tense is also commonly used to describe the content of a recording or photograph, even though the recording or photograph was necessarily made at some time in the past.  It is therefore also possible to read the rule, as the State does, as referring to the victim's age at the time the recording was made.

In our view, the State's reading is the more natural one.  Typically, when a person describes a recording, the expectation is that the description applies to the recording at the time it was made, not to some future time when the recording might be

---

[4]  Hayes did not object to K.E.'s video-recorded statements on this basis, even though she had turned sixteen years old by the time of trial.

[5]  *Brown v. State*, 404 P.3d 191, 193 (Alaska App. 2017) (quoting *ARCTEC Servs. v. Cummings*, 295 P.3d 916, 920 (Alaska 2013)).

[6]  *State v. Thompson*, 425 P.3d 166, 169 (Alaska App. 2018) (citing *State v. Fyfe*, 370 P.3d 1092, 1094 (Alaska 2016)).

used. For example, if a video is described as "the recorded statement by a victim who is intoxicated," the expectation would be that the victim was intoxicated at the time the statement was made. Likewise, "a recorded statement by a victim who is wearing a blue shirt" would be assumed to be describing the victim in the recording, rather than what the victim is wearing in the courtroom.

In other words, the language of Rule 801(d)(3), although not perfectly plain, supports the more natural interpretation offered by the State: The victim must have been "less than 16 years of age" at the time the recording was made.

This interpretation of the rule is consistent with how other states have interpreted similar rules in their own jurisdictions. Although some of the analogous rules in other jurisdictions are unambiguous and clearly state whether the victim's age referenced in the rule is the age at the time the recording was made or at the time of trial,[7]

---

[7] *See, e.g.*, Del. Code Ann. tit. 11, § 3513(a) (2020) (admitting "[a]n out-of-court statement made by a child victim or witness who is under 11 years of age at the time of the proceeding"); Ind. Code § 35-37-4-6(d)(l) (2020) (admitting "[a] statement or videotape that is made by a person who at the time of trial is a protected person [*e.g.*, 'a child who is less than fourteen (14) years of age']"); Ohio R. Evid. 807(A) (admitting "[a]n out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing"); 42 Pa. Cons. Stat. § 5985.1(a)(1) (2020) (admitting "[a]n out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger"); S.C. Code Ann. § 17-23-175(C)(1) (2020) (admitting out-of-court statements made by "a person who is under the age of twelve years at the time of the making of the statement"); Vt. R. Evid. 804a(a) (admitting "[s]tatements by a person who is a child 12 years of age or under . . . at the time the statements were made"); Wis. Stat. § 908.08(3)(a) (2020) ("The court or hearing examiner shall admit the recording upon finding . . . [t]hat the trial or hearing in which the recording is offered will commence: 1. Before the child's 12th birthday; or 2. Before the child's 16th birthday and the interests of justice warrant its admission . . . .").

there are some rules that contain an ambiguity similar to the one presented here.[8] In the face of such ambiguity, courts in other jurisdictions have generally concluded that the law is referring to the victim's age at the time the recording was made.[9]

The legislative history of Evidence Rule 801(d)(3) provides further support for the State's interpretation that it is the victim's age at the time of the recording that matters, rather than the victim's age at the time of trial.

Rule 801(d)(3) originated in 2005 as Senate Bill 117, and its legislative history reveals a dual purpose: (1) to protect children from the traumatic experience of testifying; and (2) to provide the best evidence of the abuse to the jury.

In introducing the bill to the Senate Judiciary Standing Committee, its sponsor, Senator Hollis French, expressed his belief that "young victims of crime don't

---

[8]    *See, e.g.*, Ga. Code Ann. § 25-8-820 (2020) (admitting statements "made by a child younger than 16 years of age"); La. Stat. Ann. § 15:440.2(C)(1) (2020) (admitting statements of "a victim of a crime or a witness in a criminal proceeding and who is . . . [u]nder the age of seventeen years"); Mass. Gen. Laws ch. 233, § 82 (2020) (admitting "statements of a child under the age of ten"); Tenn. Code Ann. § 24-7-123(a) (2020) (admitting "a video recording of an interview of a child by a forensic interviewer containing a statement made by the child under thirteen (13) years of age").

[9]    *See, e.g.*, *Darden v. State*, 425 S.E.2d 409, 410 (Ga. App. 1992) (holding that "the age of the child at the time the statements were made is determinative of their admissibility"); *State v. In re A.M.*, 994 So.2d 1277, 1278 (La. 2008) (assessing the victim's age "[a]t the time the interviews at issue were videotaped"); *In re Adoption of Daisy*, 934 N.E.2d 252, 259-60 (Mass. App. 2010) (holding that the statutory language dictated that "it is the age of the child when the statements were made that is the determinative consideration"); *State v. Herron*, 461 S.W.3d 890, 904 n.11 (Tenn. 2015) (noting that the statutory language authorizes the admission of recorded forensic interviews "only if the child is under the age of thirteen when the statement is given"); *see also State v. Roman*, 590 A.2d 686, 688, 690 (N.J. App. 1991) (holding that the age requirement of former Evidence Rule 63(33) — admitting statements "by a child under the age of 12" — is "satisfied if the declarant was under 12 years of age when the statement was made" and that the child's age at the time of trial "is irrelevant").

get a fair shake in courtrooms in Alaska."[10] He described the longstanding, beneficial practice of forensically interviewing child victims at CACs — "safe, nurturing, child-friendly environments [where] the interviewers are specially trained to work with children and work with a multidisciplinary team focused on the child's welfare."[11]

Senator French explained that the victim's narrative, as told to the forensic interviewer, is "often much more informative about the child's experience with an abuser than the testimony the child will give in a formal court setting."[12] Even if an attorney could elicit the basics of the victim's account on the witness stand, that account rarely possessed the "vitality and the breadth and the depth of the statement given back at the CAC."[13]

Senator French expressed his dismay that a child victim's "full" statement at the CAC was largely inadmissible in court, and that the jury was therefore forced to rely on the victim's narrative often years after the fact.[14] He explained that a victim's "difficulty in articulating the details of a very painful and very private experience often results in a reduction of the charges"[15] and that the bill would therefore "enhance the law enforcement process to bring child predators to justice."[16] Thus, by "let[ing] those

---

[10] Audio of Senate Judiciary Comm., Senate Bill 117, testimony of Senator French, 9:27:09-9:27:16 a.m. (Mar. 31, 2005).

[11] *Id.* at 9:27:41-9:27:51 a.m.

[12] *Id.* at 9:28:22-9:28:30 a.m.

[13] *Id.* at 9:30:05-9:30:41 a.m.

[14] *Id.*

[15] *Id.* at 9:28:43-9:28:51 a.m.

[16] *Id.* at 9:28:12-9:28:17 a.m.

statements come in, let[ing] the jury see the entire story,"[17] the proposed rule would "help protect Alaska's children and bring swifter justice for them."[18]

The legislature's goal of "amplify[ing] the voices of children who have been abused and children who have been sexually assaulted and let[ing] their voices shine in a courtroom as strongly as possible"[19] does not depend on the victim's age at trial. In fact, adopting Hayes's interpretation of only allowing admission of these statements when the victim is under sixteen years old at the time of the trial would frustrate the legislature's purpose of providing narratives that are closer in time to the incident, when memories are most fresh.[20] Furthermore, as other jurisdictions have recognized, it would be unfair to penalize the victims for delays in the trial process outside their — or even the State's — control.[21]

Hayes argues that the primary concern of the legislature — preventing inaccurate or unreliable testimony caused by a child victim's impaired communication on the stand in the presence of a defendant — no longer applies to adult witnesses. We

---

[17]   *Id.* at 9:31:04-9:31:08 a.m.

[18]   Press Advisory, "French, Kookesh File Bills to Protect Children," Alaska State Legislature, Senator Hollis French, Senator Albert Kookesh (Feb. 28, 2005).

[19]   Senate Floor Session, 24th Alaska Legislature, Debate on House Bill 53, testimony of Senator French, Gavel Audio at 47:21-47:45 (May 9, 2005).

[20]   *Cf. State v. Gaines*, 342 S.W.3d 390, 397 (Mo. App. 2011) (explaining that, as a practical matter, "[a]s the period of time between the sexual attack and trial grows longer, it only makes sense that the need to use these out-of-court statements becomes more critical to ensure the victim's testimony does not 'become contaminated by contacts and influences prior to trial'") (quoting *State v. Benwire*, 98 S.W.3d 618, 624 (Mo. App. 2003)).

[21]   *See, e.g.*, *State v. Roman*, 590 A.2d 686, 690 (N.J. App. 1991) (explaining that interpreting the age requirement to be the age at the time of trial "might encourage the defense to delay trial and hold the prosecutor captive to dilatory tactics").

acknowledge that adults are likely better equipped to confront painful experiences, but the legislature's reliability concerns still remain.[22]  By the time N.E. testified at trial — when she was over eighteen years old — her direct testimony was often halted.  At times, she struggled to remember details of the abuse that had happened over four years earlier.  Without the videotaped statement, about which N.E. was cross-examined over the course of two days, the jury would not have heard the "fuller and more in-depth" narrative the legislature intended it to consider.[23]

In sum, we conclude that the language of the rule, the relevant legislative history, and the underlying policy rationales support the State's interpretation of Evidence Rule 801(d)(3).  Accordingly, we construe the language "a recorded statement by a victim of a crime who is less than 16 years of age" to apply to the age of the victim at the time the recording was made, not the age of the victim at the time the recording is admitted into evidence.  We therefore reject this claim on appeal.

*Hayes's argument that the videos were foundationally deficient under Rule 801(d)(3) because they were conducted by the investigating officers*

Hayes also argues that both K.E.'s and N.E.'s videos were foundationally deficient under Rule 801(d)(3) — specifically, under subsections (C) and (F) — because the interviews were conducted by the police detectives involved in the investigation of Hayes's offenses.  Subsection (C) precludes the prosecutor and defense attorney from being present when a victim's statement is taken, and subsection (F) requires the court

---

   [22]  *See Gaines*, 342 S.W.3d at 397 ("[I]t is common sense that our memories of childhood fade and distort over time as we grow older, so the idea that we are somehow able to articulate traumatic events that occurred in our childhood *better* when we are adults seems divorced from reality.") (emphasis in original).

   [23]  Audio of Senate Judiciary Comm., Senate Bill 117, testimony of Senator French, 9:30:57-9:31:01 a.m. (Mar. 31, 2005).

to determine that "the taking of the statement as a whole was conducted in a manner that would avoid undue influence of the victim."

Hayes concedes that the trial court "did generally evaluate the interviews under Rule 801(d)(3)(F)." He also concedes that "outwardly, there was nothing suggestive about the procedure." According to Hayes, however, the trial court failed to consider that allowing police interviewers would raise the same concerns addressed in subsection (C) and that their presence would unduly influence the victims under subsection (F).

In essence, then, Hayes's argument is that interviews by police investigators assigned to the case should be *per se* inadmissible under Rule 801(d)(3). We have previously addressed (but declined to decide) this question in *Augustine v. State*.[24] We acknowledged in *Augustine* that "if the attorneys representing the State and the defendant are barred from participating, so as to preserve the neutrality and non-suggestiveness of the interview, the participation of agents of those attorneys — their paralegals and their investigators — would seemingly raise the same concerns."[25] We also pointed out that "recent psychological research has shown that a witness's identification of a suspect can be influenced by the police interviewer's inadvertent, even unconscious, verbal and physical cues — cues that arise from the interviewer's pre-existing knowledge and theories of the case."[26] Ultimately, however, we declined to decide whether to adopt a

---

[24] *Augustine v. State*, 355 P.3d 573, 586 (Alaska App. 2015).

[25] *Id.*

[26] *Id.* (citing *Tegoseak v. State*, 221 P.3d 345, 351-62 (Alaska App. 2009)); *see Tegoseak*, 221 P.3d at 350-52 (canvassing the increasing psychological research on unconscious signaling and citing research proposing that police departments adopt double-blind procedures — in which neither the questioner nor the subject being tested knows the nature of the information required — in order to minimize the risk that officers

(continued...)

*per se* rule in *Augustine*. Instead, because we were already remanding for further findings under Rule 801(d)(3) for a different reason, we directed the superior court to consider the concerns noted above in assessing whether the interviews in that case met the foundational requirements of Rule 801(d)(3).[27]

Now, with the issue squarely presented, we conclude that interviews conducted by police investigators involved with the case are not *per se* inadmissible under Rule 801(d)(3).

Beginning with the statutory language, we note that nothing in the rule itself forbids police investigators involved in the case from conducting the interviews. This stands in contrast to subsection (C), which expressly forbids the prosecutor and defense counsel from being present when the statement is taken.

Furthermore, the legislative history of Senate Bill 117 suggests that the legislature contemplated that police officers would be conducting forensic interviews. The bill's proponents before the Senate Judiciary Committee included law enforcement personnel who were specially trained to conduct these interviews. Senator French, when introducing the bill, specifically noted that the "multidisciplinary team [at the CAC] focused on the child's welfare . . . may include police officers, social workers, child therapists, medical professionals, and child advocates."[28] Moreover, the bill did not require an interview to be conducted at a CAC, as the senators noted the limited access

---

[26] (...continued)
unintentionally influence witnesses, even if their conduct is not overtly suggestive).

[27] *Augustine*, 355 P.3d at 586.

[28] Audio of Senate Judiciary Comm., Senate Bill 117, testimony of Senator French, 9:27:48-9:27:58 a.m. (Mar. 31, 2005).

to CACs around the state.[29]  In other words, the legislature assumed that police officers would conduct at least some of the interviews the legislature intended to be admissible under Rule 801(d)(3).

Given the legislature's awareness that police officers would be conducting some of these interviews, and given the legislature's explicit prohibition of prosecutor or defense counsel involvement in the interviews, it is reasonable to conclude that if the legislature had intended to exclude police investigators involved in the case from conducting these interviews, it would have said so expressly.  In the absence of an express directive, we decline to adopt a *per se* rule excluding all interviews conducted by police investigators involved in the case.

As we acknowledged in *Augustine*, however, an officer intimately involved with the case heightens the possibility of unduly influencing the victims.  Trial courts evaluating interviews conducted by police investigators should be particularly wary of this possibility and, in assessing whether the interviews meet the foundational requirements of Rule 801(d)(3)(F) and (H), should consider the risk that the child's responses could have been influenced by the officer's knowledge and expectations.[30]

Here, the trial court independently reviewed both interviews and, as Hayes acknowledges, made the requisite analysis under Rule 801(d)(3)(F).  The court found that the detective's interview of K.E. was a "very good interview and a very fair interview," with "nothing to suggest any inappropriate answers nor any undue

---

[29]  *Id.* at 9:33:55-9:34:10 a.m. (testimony of Senator French and Senator Therriault).

[30]  *See Tegoseak*, 221 P.3d at 351-52 (explaining the "Clever Hans effect," where medical researchers, "because of their knowledge of the experiment and their expectations concerning the outcome, can unintentionally influence the responses of the test subjects — by unconscious signaling, or by small differences in how they interact with test subjects" and that "photographic lineups could be affected by these same difficulties").

influence." Although the court noted that another detective's questioning of N.E. was "a little bit different," again, the court found that "there wasn't any inducement or any attempt to unduly influence the person being interviewed at that time." The court noted that N.E. actually corrected the officer and tried clarifying the questions at various points, which further indicated that there was no undue influence on her.

The court also distinguished these videos from others it had seen — those that were "so leading and so suggestive" that it would not allow them to be admitted. In contrast, the court found K.E.'s and N.E.'s videos "sufficiently reliable and trustworthy that justice [would be] best served by allowing them into evidence," pursuant to Rule 801(d)(3)(H).

Given these findings, it is clear that the superior court considered and rejected the possibility that the police investigators involved in the case unduly influenced the responses provided by the children. Under these circumstances, the trial court did not abuse its discretion in admitting the Alaska CARES videos of K.E. and N.E. under Rule 801(d)(3).

*Hayes's challenge to the child sexual abuse expert testimony*

On appeal, Hayes argues that the trial court abused its discretion by allowing the State to offer testimony of expert witness Pamela Karalunas in its case-in-chief. Karalunas, the statewide coordinator of the Alaska Children's Alliance, was qualified as an expert witness in the "dynamics of child sexual abuse and the process of disclosure of child sexual abuse." As the State's final witness, she testified regarding children's reporting patterns, drawn from her decades of experience working with child sexual abuse victims and their families. Hayes argues that this testimony amounted to "sexual abuse profile evidence" and that Karalunas was acting as a "human polygraph."

As the Alaska Supreme Court has recognized, "[i]n child sexual abuse cases, there is usually little corroborating physical evidence of the alleged abuse; the child may not report the abuse until several years have passed and the matter often comes down to the alleged victim's word against the word of the alleged abuser."[31] And this Court has held that an expert witness can testify "concerning the usual behavior of victims of child sexual abuse" in order to help the jury better assess the victims' credibility.[32]

We note that there are limits to such opinion testimony. For instance, it must be offered in response to a defense claim that the "conduct in question is inconsistent with claims of sexual abuse,"[33] and the experts must "generally ma[ke] it clear that [they are] not speaking for the truthfulness of these particular witnesses."[34] There is a "significant distinction between presenting a witness, such as a polygraph operator, to testify that a person is telling the truth, and presenting a witness who can state that the behavior of a witness falls within a common pattern."[35] Based on our

---

[31] *L.C.H. v. T.S.*, 28 P.3d 915, 923 (Alaska 2001).

[32] *Rodriquez v. State*, 741 P.2d 1200, 1204 (Alaska App. 1987) (citing *State v. Middleton*, 657 P.2d 1215, 1219-20 (Or. 1983)).

[33] *L.C.H.*, 28 P.3d at 924; *see also Vickers v. State*, 2008 WL 4367527, at *3 (Alaska App. Sept. 24, 2008) (unpublished) ("Both this court and the Alaska Supreme Court have previously held that the State cannot introduce expert testimony about the behavior of victims of abuse or domestic violence for the purpose of suggesting that a particular person's claim of assault or abuse should be believed because that person fits the 'profile' of a particular kind of victim. Rather, the State can rely on such expert testimony only to rebut defense claims that the behavior of the purported victim was seemingly inconsistent with a claim of assault or abuse." (footnotes omitted)).

[34] *Rodriquez*, 741 P.2d at 1205.

[35] *Id.* at 1204.

review of the record, we conclude that Karalunas's testimony was consistent with these limitations and that the court therefore did not abuse its discretion in admitting it.[36]

### *Hayes's challenge to N.E.'s testimony that Hayes admitted to having been sexually abused himself*

At trial, N.E. testified on direct examination that when Hayes's abuse was finally revealed to her mother, her mother insisted that N.E. confront Hayes directly. N.E.'s mother brought N.E. and Hayes into the same room and, in Hayes's presence, asked N.E. if Hayes had ever touched her. N.E. said yes. According to N.E., her mother then turned to Hayes, "and she . . . asked him if he had ever touched [N.E.] and he said yes." The prosecutor continued:

> *Prosecutor*: Did he say anything more about I guess why he had touched you?
>
> *N.E.*: In that same room he said it was because he was molested as a kid.
>
> *Prosecutor*: Did he say I guess that affected me?
>
> *N.E.*: Yes.

Additionally, the jury heard N.E.'s Alaska CARES interview, in which N.E. also mentioned Hayes's statement that he had been molested as a child.

On appeal, Hayes claims the trial court should not have admitted this evidence because it was irrelevant and prejudicial under Alaska Evidence Rules 401 and

---

[36] *See, e.g., Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010) ("We review a trial court's decision to admit or exclude evidence, including expert witness testimony, for abuse of discretion and will only reverse an erroneous decision if it affected the substantial rights of a party." (footnotes omitted)); *Handley v. State*, 615 P.2d 627, 630 (Alaska 1980) ("The decision whether to permit a witness to testify as an expert is one committed to the sound discretion of the trial court. Such decisions are reviewable only for abuse [of discretion]." (citing *Pederson v. State*, 420 P.2d 327, 335 (Alaska 1966))).

403. He argues that this testimony amounted to propensity evidence which allowed the jury to believe that because he had been molested when he was younger, he was more likely to commit this particular crime.

We agree that, as a general matter, evidence of a defendant's own abuse as a child can carry "a strong and unmistakable potential for prejudice."[37] In *Nelson v. State*, for instance, we reversed a conviction for second-degree sexual abuse of a minor when the trial court allowed a State witness to testify that the defendant "had once admitted being sexually abused as a boy by his father."[38] We recognized "the widespread belief that sexual abusers of children are frequently people who have themselves been victims of abuse as children."[39] This was particularly true in Nelson's case — where the conduct the defendant had been subjected to as a child closely tracked the conduct to which he allegedly subjected his young victim.

But Hayes's case is meaningfully different from *Nelson*, and we conclude that, to the extent that N.E.'s testimony should not have been admitted, any error was harmless. The prosecution did not dwell on N.E.'s testimony or make needless references to Hayes's past. Instead, the prosecution only once referenced this admission — in closing argument to bolster N.E.'s credibility. The prosecutor argued that, given N.E.'s report of Hayes's detailed reaction, it was unlikely that she was the one lying in the confrontation (rather than the defendant or her mother, who testified that no admission of guilt had occurred). The jury was also instructed to view Hayes's unrecorded, out-of-court statement with caution. Under these circumstances, any prejudice to Hayes was minimized, and we find no reversible error.

---

[37] *Nelson v. State*, 782 P.2d 290, 297 (Alaska App. 1989).

[38] *Id.* at 296.

[39] *Id.* at 297.

*Hayes's argument that he was prejudiced by the trial court's refusal to compel the production of Tiburon reports*

Prior to trial, Hayes moved to compel Tiburon reports[40] relating to the victims and their aunt (who had brought them to Alaska CARES). He asserted, in general terms, that these records of police contacts "may lead to further discoverable information bearing on the credibility of S.D., N.E., K.E. and [their aunt]." He also asserted that "[u]pon information and belief, both S.D. and K.E. have had contact with [the Anchorage Police Department], as runaways." The trial court denied this request, although the trial court appears to have granted a second, narrower request for certain Tiburon records related to a police contact with K.E. at her elementary school.

On appeal, Hayes argues that the superior court erred when it denied his initial motion to compel Tiburon reports. He argues that he was prejudiced by this error because discovery of these reports could have provided "evidence that the girls ran away prior to reporting the offenses" and that this evidence "would have supported Hayes's claim that the girls fabricated the claims to get out of their horrible environment."

But, as the State points out, Hayes had similar evidence in his possession at the time of trial and did not use it. Our review of the record indicates that Hayes received a significant amount of discovery from the Office of Children's Services documenting the family's poor living conditions, as well as the mother's drug abuse and neglect. The confidential reports also included numerous references to incidents in which S.D. and K.E. ran away from home. The State also provided police reports related

---

[40] Tiburon is the electronic records management database maintained by the Anchorage Police Department. Police officers upload their investigative reports into the Tiburon system, including reports of any prior contacts that witnesses and victims may have had with law enforcement.

to these runaway attempts — information specifically requested as part of Hayes's motion to compel Tiburon reports.

Hayes does not dispute that his attorney had this evidence regarding S.D.'s and K.E.'s runaway attempts and failed to use the information at trial. The attorney did not question the girls about their runaway attempts, nor did he call anyone identified in the reports to testify as a defense witness.[41]

The State argues that, given these circumstances, any error in failing to discover the Tiburon reports was harmless. We agree, and we therefore reject this claim.

*Hayes's challenge to Special Probation Condition 12*

Finally, Hayes argues the trial court committed plain error by imposing an unconstitutionally vague probation condition at sentencing. He specifically challenges Special Condition Number 12, which read as follows:

> The defendant shall submit to a search of their residence, any vehicle under their control, personal computer and/or any item which has internet connectivity (i.e., X-Box, cell phone, palm pilots, Blackberries) at the direction of a probation officer for the presence of sexually explicit material as defined in AS 11.41.455(a). The defendant shall provide the probation officer any and all passwords used for such devices.

Hayes argues that the requirement that he submit to certain searches for "sexually explicit material" was overbroad.

Hayes's argument is unpersuasive. The imposed probation condition does not require him to submit to searches for sexually explicit material as a general matter;

---

[41] We also note that K.E. testified on direct examination that she was in treatment because she ran away. Hayes's attorney, however, did not cross-examine her regarding this statement.

it requires him to submit to searches for "sexually explicit material *as defined in AS 11.41.455(a)*." Alaska Statute 11.41.455(a) defines the crime of unlawful sexual exploitation of a minor and contains a specific list of proscribed sexual conduct. We have previously endorsed referring to this statute as a means of resolving the ambiguity in the phrase "sexually explicit material," thereby preventing the probation condition from being unconstitutionally vague.[42] Given the trial court's incorporation of AS 11.41.455(a), we find no plain error.

*Conclusion*

For the reasons described above, we AFFIRM the judgment of the superior court.

---

[42] *Diorec v. State*, 295 P.3d 409, 417-18 (Alaska App. 2013).